No. 2--00--0177, 2--00--0178 cons. 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

FRANK E. PACIGA,              ) Appeal from the Circuit Court

                              ) of De Kalb County.

     Plaintiff-Appellee,      )

                              )

v.                            ) No. 99--MR--15     

                              )          

THE PROPERTY TAX APPEAL ) 

BOARD and THE DEKALB COUNTY   )                  

BOARD OF REVIEW,        ) Honorable

                              ) John W. Countryman,

Defendants-Appellants.   ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The defendants, the Illinois Property Tax Appeal Board (PTAB) and the De Kalb County Board of Review (De Kalb Board), appeal the order of the trial court reversing the PTAB’s decision upholding the reassessment of the property of the plaintiff, Frank E. Paciga.  This court consolidated the defendants' separate appeals.  We affirm.

Prior to 1997, Paciga's property, 23.59 acres in Kingston, De Kalb County, Illinois, was assessed as farmland.  More specifically, 3.15 acres of the parcel were assessed as "cropland" because they had been farmed in 1995, 1996, and 1997, and the remaining 20.40 acres (.04 acres of road were disregarded) were assessed as "other farmland."  See 35 ILCS 200/10--125(c) (West 1996).  This "other farmland" was wooded and was not farmed; however, Paciga had sold timber from these acres.

In accordance with section 10--125(a) of the Property Tax Code (Code), the "cropland" was assessed "in accordance with the equalized assessed value of its soil productivity index" adjusted (or debased) for certain factors.  35 ILCS 200/10--125(a) (West 1996).  "Other farmland" was assessed "at 1/6 of its debased productivity index equalized assessed value as cropland."  35 ILCS 200/10--125(c) (West 1996). Based on this method, the total assessed value of Paciga’s land was $1,178 in 1996. 

In 1996, Paciga subdivided his property into 14 lots, causing each lot to become an individual parcel.  Paciga also had a road cut into the wooded acres to service the lots.  

In 1997, the De Kalb Board valued the now subdivided property at $21,763, using a method different from that of previous years.  The De Kalb Board assessed the property by calculating the market value of the subdivided parcels, using the median sales of comparable farmland in 1996.

In response to the new assessed valuation, Paciga appeared before the PTAB, claiming overvaluation.  Paciga argued that section 10--30(a) (35 ILCS 200/10--30(a) (West 1996)) of the Code prohibited the increased assessed valuation.  The PTAB disagreed and held that section 10--30(b) (35 ILCS 200/10--30(b) (West 1996)) permitted the new assessed valuation because the land had been platted and subdivided.  The PTAB reasoned that section 10--30(b) provided that platted and subdivided property must be valued by calculating the property’s market value as it was used prior to platting.  The PTAB then concluded that, except for the 3.15 acres that had been cropland, the De Kalb Board properly assessed the value of the property using the market value of the farmland at $1,131 an acre.  The 3.15 acres, the PTAB concluded, should have been assessed as agriculture. 

Paciga filed an administrative review action, and the trial court reversed the decision of the PTAB, finding that the PTAB had misinterpreted the law and failed to apply the plain language of section 10--30(a) of the Code.   35 ILCS 200/10--30(a) (West 1996).  The trial court remanded the matter for reassessment at the assessed value of the property prior to the platting and subdividing.

On appeal, the PTAB and the De Kalb Board argue that the trial court improperly interpreted section 10--30 of the Code and erred by reversing the decisions of the PTAB and the De Kalb Board.

Section 10--30 of the Code provides:

"(a) In counties with less than 3,000,000 inhabitants, the platting and subdivision of property into separate lots and the development of the subdivided property with streets, sidewalks, curbs, gutters, sewer, water and utility lines shall not increase the assessed valuation of all or any part of the property, if:

(1) The property is platted and subdivided in accordance with the Plat Act [(765 ILCS 205/0.01 
et seq.
)];

(2) The platting occurs after January 1, 1978;

(3) At the time of platting the property is in excess of 10 acres; and 

(4) At the time of platting the property is vacant or used as a farm as defined in Section 1--60.

(b) Except as provided in subsection (c) of this Section, the assessed valuation of property so platted and subdivided shall be determined each year based on the estimated price the property would bring at a fair voluntary sale for use by the buyer for the same purposes for which the property was used when last assessed prior to its platting.

(c) Upon completion of a habitable structure on any lot of subdivided property, or upon the use of any lot, either alone or in conjunction with any contiguous property, for any business, commercial or residential purpose, or upon the initial sale of any platted lot, including a platted lot which is vacant: (i) the provisions of subsection (b) of this Section shall no longer apply in determining the assessed valuation of the lot, (ii) each lot shall be assessed without regard to any provision of this Section, and (iii) the assessed valuation of the remaining property, when next determined, shall be reduced proportionately to reflect the exclusion of the property that no longer qualifies for valuation under this Section.  Holding or offering a platted lot for initial sale shall not constitute a use of the lot for business, commercial or residential purposes unless a habitable structure is situated on the lot or unless the lot is otherwise used for a business, commercial or residential purpose."  35 ILCS 200/10--30 (West 1996).

The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. 
 Lieb v. Judges' Retirement System
, 314 Ill. App. 3d  87, 92 (2000).  We must first look to the words of the statute as the best indication of legislative intent.  However, if the words used in a statute are ambiguous or if the meaning is unclear, the court may consider the legislative history as an aid to construction.  
Armstrong v. Hedlund Corp.
, 316 Ill. App. 3d 1097, 1106 (2000).  A statute is ambiguous if it is capable of two reasonable and conflicting interpretations.  
Tri-State Coach Lines, Inc. v. Metropolitan Pier & Exposition Authority
, 315 Ill. App. 3d 179, 190 (2000).  Our supreme court further instructs courts that, "[i]f the language of a statute is susceptible to two constructions, one of which will carry out its purpose and another which will defeat it, the statute will receive the former construction."  
Harvel v. City of Johnston City
, 146 Ill. 2d 277, 284 (1992).  A court should not construe a statute in a manner that would lead to consequences that are absurd, inconvenient, or unjust.  
McMahan v. Industrial Comm'n
, 183 Ill. 2d 499, 513-14 (1998).  Further, a court should avoid an interpretation of a statute that would render any portion of it meaningless or void.  
McNamee v. Federated Equipment & Supply Co.
, 181 Ill. 2d 415, 422 (1998). We review a decision regarding the construction of a statute 
de novo
.  See 
Paris v. Feder
, 179 Ill. 2d 173, 177-78 (1997).

Applying these principles, we conclude that section 10--30 of the Code is ambiguous because it is susceptible to two conflicting interpretations.  Subsection 10--30(a) provides that the assessed valuation of farm or vacant property larger than 10 acres will not increase when it is platted, subdivided, and developed with streets, etc.  35 ILCS 200/10--30(a) (West 1996). On the other hand, subsection 10--30(b) seems to provide that the assessed valuation of platted and subdivided property may increase every year because it is to be based on the estimated price the property would bring at a fair voluntary sale.  35 ILCS 200/10--30(b) (West 1996).  Thus, these two subsections seem to contradict each other.  Because this section is capable of two reasonable interpretations, we now consider the legislative history and background of the statute for clarification of the legislature's intent in enacting section 10--30.

The sponsor of Senate bill 574, Senator Jerome Joyce, explained the purpose of the bill:

"This legislation is essentially intended to protect the real estate developers from rising assessments which result from initial platting and subdividing farmland for real estate development.  It's not uncommon for a real estate developer to purchase farmland for development site and then see the assessment double or triple.  What this does is says that they will not be...will not have that raise even though they may put in curbs, and gutters, and...and sidewalks until they have sold the...the plat.  We have seen what is [
sic
] happened to real estate developers in the past couple of years and...they are unable to sustain this...their development because of the increased cost of taxes and this would hold that until they sold the property."  83d Ill.  Gen. Assem., Senate Proceedings,  May 24, 1983, at 293 (statements of Senator Joyce).  

Later, Representative Slape repeated the general understanding of the purpose of the bill:

"And actually what the Bill says on the bottom line is, if a person buys a tract of land of more than 10 acres and puts certain improvements such as water lines, streets or curb and guttering, that the assessment of that land shall not rise until he either sells the lot or he does development on that property."  83d Ill.  Gen. Assem., House Proceedings, June 24, 1983, at 184 (statements of Representative Slape).

Representative Dennis Hastert declared the broader goal of the bill:

"I join with Representative Slape in asking for your affirmative vote on this.  This, indeed, does deal with economic recovery where builders are starting to plat land or bring land into...and start to build houses and get the economy going.  This is an incentive for them that they're not going to have to come down with a big hammer on that land until, indeed, the house is sold.  I think it's a positive incentive and is a positive step towards economic recovery, and I ask for your positive vote on this."  83d Ill.  Gen. Assem., House Proceedings,  June 24, 1983, at 184-85 (statements of Representative Hastert).

This background reveals a legislative purpose designed to prevent developers from having to pay increased taxes on farmland or vacant land in the beginning of the development process.  Instead, the assessment would remain the same until a house is built or the property is used for a commercial purpose.  Accordingly, we determine that the legislature's exclusive focus in enacting section 10--30 was to encourage developers to develop land that had previously been used as farmland or had been vacant.  Stated another way, the "particular evil" that section 10--30 was intended to remedy was the imposition of a higher tax upon real estate property developers before they had the opportunity to reap the benefits of their investments. 

It follows then that subsection 10--30(a) applies to situations like the one at bar, where a property larger than 10 acres and  previously classified as farm property has been platted and subdivided with streets but no habitable structure has been completed on any lot nor is any lot used for any business, commercial, or residential purpose.  Further, the language of subsection 10--30(c), interpreted with the aid of the legislative purpose, reveals that no change in valuation will occur until a habitable structure is constructed on one of the lots or one of the lots is used for any business, commercial, or residential purpose.  At that time, the lot at issue will be assessed separately from the remaining lots.  Subsection 10--30(b) then explains how the remaining lots are assessed, that is, "based on the estimated price the property would bring at a fair voluntary sale."  35 ILCS 200/10--30(b) (West 1996).  Therefore, subsection 10--30(b) applies only when one of the lots contains a habitable structure or is used for a residential, business, or commercial purpose.  Absent such a change in use, subsection 10--30(a) applies to the entire property and the assessment valuation will not increase.  35 ILCS 200/10--30(a) (West 1996).  Accordingly, the trial court properly reversed the PTAB and the De Kalb Board and determined that the property at issue must be assessed at the assessed valuation prior to platting.

The PTAB and the De Kalb Board argue that subsection 10--30(b) defines "assessed valuation" as "the estimated price the property would bring at a fair voluntary sale for use by the buyer for the same purposes for which the property was used when last assessed prior to its platting."  However, the PTAB and the De Kalb Board fail to recognize that subsection 10--30(b) describes only one method of assessed valuation.  It is not meant to be the only method.  Obviously, the Code includes other methods of valuation, such as the methods previously used to assess Paciga's property; the equalized assessed value of cropland soil productivity (see 35 ILCS 200/10--125(a) (West 1996)); and one-sixth of "other farmland's" debased productivity index value as cropland (35 ILCS 200/10--125(c) (West 1996)).  There is nothing in subsection 10--30(b) that indicates that the method described therein is the only method of assessing property.  Further, the interpretation offered by the PTAB and De Kalb County disregards and abrogates the preclusion of a change of assessment as indicated by the language in subsection 10--30(a) and the legislative history.  In addition, by interpreting the Code in such a way, the PTAB and De Kalb County defeat the purpose of the statute and render subsection 10--30(a) meaningless and void.  Thus, we reject the interpretation of the PTAB and De Kalb County.  See 
McMahan
, 183 Ill. 2d at 513-14; 
McNamee
, 181 Ill. 2d at 423.

Next, the PTAB and the De Kalb Board argue that the PTAB's determination that the wooded tract was not in agricultural use was not against the manifest weight of the evidence.  This argument is mooted by our determination that the PTAB misapplied section 10--30 and failed to understand that nothing triggered the reassessment of Paciga's property under subsection 10--30(b). Thus, according to subsection 10--30(a), the assessed valuation was not to be increased.

The PTAB and the De Kalb Board argue that the PTAB correctly found that the wooded area of Paciga's property had been incorrectly assessed as farmland in the past and, thus, subsection 10--30(a) does not bar an increased assessed valuation here.  We disagree.  The record indicates that the PTAB found only that the wooded area "was not utilized for an agricultural purpose in 
1997
."  (Emphasis added.)  It then decided that, unlike the 3.15 acre cropland area, it was not exempt from subsection 10--30(b).  The PTAB did not find that the wooded area had been incorrectly assessed as farmland prior to platting.  In fact, in applying subsection 10--30(b), the PTAB held that the De Kalb Board correctly based the new assessment of the wooded area on the market value of 1996 farmland sales.  Thus, this argument fails.

For these reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

HUTCHINSON, P.J., and GROMETER, J., concur.