No. 2-09-0737    Filed:  9-17-10  Modified 11-15-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| OAKRIDGE DEVELOPMENT COMPANY, ALGONQUIN RANDALL, LLC, and MILLER FAMILY PARTNERSHIP, | ) ) ) | Petition for Review of the Order of the Illinois Property Tax Appeal Board. |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 06-01901.001-F-3. |
| | ) | |
| THE PROPERTY TAX APPEAL BOARD, THE McHENRY COUNTY BOARD OF REVIEW, and COMMUNITY UNIT SCHOOL DISTRICT No. 300, | ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

Modified Upon Denial of Rehearing

JUSTICE O'MALLEY delivered the opinion of the court:

Petitioners, Oakridge Development Co. (Oakridge); Algonquin Randall, LLC; and Miller Family Partnership (the Miller Family), appeal for review of the decision of respondent, the Illinois Property Tax Appeal Board (Board), upholding the rejection by respondent, the McHenry County Board of Review, of petitioners' property tax appeal. (Their appeal also names a third respondent, Community Unit School District No. 300.) On appeal, petitioners argue that the Board erred in concluding that the subject property was not eligible for farmland classification for property tax purposes. For the reasons that follow, we confirm the decision of the Board.

The parties do not dispute the relevant facts. The Miller Family owned the subject property at all pertinent times prior to 2006, and for the eight years preceding 2006 it used the property for farming in each year. According to an affidavit filed by Oakridge's president, "[i]n early 2006 the [Miller Family] and their tenant readied the land for cultivation by using a herbicide," but, when the time to plant crops came, "the family concluded that Oak Ridge would close a sale, so they abandoned their plans to plant crops." According to an affidavit of the Miller Family's managing partner, the land was used as farmland in 2004 and 2005 and was "spray[ed] *** for weeds in anticipation of planting a 2006 crop" in April 2006. However, according to the same affidavit, in anticipation of the sale to Oakridge the Miller Family declined to plant a crop that year. The sale to Oakridge closed in December 2006. Although the property had been assessed as farmland for the 2004 and 2005 tax years, it was assessed as urban land for tax year 2006. The change in classification caused the assessed value of the subject property to rise from approximately $11,000 to over $3 million. Petitioners appealed the change in assessment to the McHenry County Board of Review. They argued to the board of review that the subject property qualified for farmland assessment in tax year 2006 because it had been used as a farm the previous two years and because that use had not discontinued as of January 1, 2006. The board of review, however, rejected petitioners' claim. The Illinois Property Tax Appeal Board likewise rejected petitioners' claim, on the basis that the relevant statutes required that, in order to be assessed as farmland for a particular tax year, property must have been used as a farm during that year. Petitioners now appeal directly to this court.[1]

_____

[1]Petitioners say in their opening brief that the land could not be developed and in fact was not developed after January 1, 2006. The Board responds in its brief by asking us to take judicial

Section 16--195 of the Property Tax Code (Code) (35 ILCS 200/16--195 (West 2008)) provides that "[f]inal administrative decisions of the [Board] are subject to review under the provisions of the Administrative Review Law [(735 ILCS 5/3--101 et seq. (West 2008))], except that in every case where a change in assessed valuation of $300,000 or more was sought, that review shall be afforded directly in the Appellate Court *** and not in the circuit court." The parties do not dispute that petitioners seek a change in valuation greater than $300,000, and, therefore, direct appeal to this court is proper.

In an administrative review action, we will reverse administrative findings of fact only if they are against the manifest weight of the evidence, but we will consider de novo any legal issues. Cook County Board of Review v. Property Tax Appeal Board, 395 Ill. App. 3d 776, 784 (2009). Out of deference to an agency's expertise in applying the laws it administers, a reviewing court will not disturb the agency's determination of mixed questions of law and fact--those issues in which the facts and law are settled and all that remains is their application--unless the determination is clearly erroneous. AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 391 (2001); City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998). The sole question presented in this appeal is whether the property tax statutes governing farmland

---

notice of the current substantial shopping development on the property. Petitioners reply by objecting to the Board's raising facts not included in the appellate record; they also argue that any activity on the property after January 1, 2006, is irrelevant. We suspect that the Board mentioned the current development on the property only to correct what seem to be inaccurate statements in petitioners' opening brief regarding the present state of the property. However, in any event, we disregard any factual assertions, from either side, not relevant to this appeal.

assessment require land to be used as a farm in the relevant tax year, or whether use for the prior two years suffices. This matter of statutory interpretation is an issue of law, and we will review it de novo. Davis Bancorp, Inc. v. Board of Review of Department of Employment Security, 393 Ill. App. 3d 135, 142 (2009).

For a court charged with interpreting a statute, the primary goal is to ascertain and give effect to the legislative intent underlying the statute, and the best indicator of that intent is the statute's language, given its plain, ordinary, and popularly understood meaning. DeRose v. City of Highland Park, 386 Ill. App. 3d 658, 660 (2008). Indeed, where statutory language is unambiguous, a court must give the language effect without resort to other, extrinsic aids of construction. DeRose, 386 Ill. App. 3d at 660. However, as we examine the statutory language, we must "give effect to the entire statutory scheme rather than looking at words and phrases in isolation from other relevant portions of the statute." Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n, 196 Ill. 2d 70, 87-88 (2001). "In other words, statutes should be construed as a whole, with each provision evaluated in connection with every other section." Primeco Personal Communications, 196 Ill. 2d at 88. We therefore begin our analysis by examining the language from the several sections of the code that comprise the legislature's property tax assessment scheme for farmland.

Section 9--155 of the Code describes generally how property should be assigned a value and how property tax should be assessed based on that value:

"On or before June 1 in each general assessment year in all counties with less than 3,000,000 inhabitants, and as soon as he or she reasonably can in [more populous counties and specially subdivided counties,] the assessor *** shall actually view and determine as near as practicable the value of each property listed for taxation as of January 1 of that year *** and assess the property at 33⅓% of its fair cash value, or in accordance with Sections

-4-

10--110 through 10--140 [or other specialized sections not applicable here]." 35 ILCS 200/9--155 (West 2008).

In any year, including non-general-assessment years, the proper authorities may "revise and correct an assessment as appears to be just," so long as they give the owner notice of the revision, as described in sections 12--10 and 12--30 (35 ILCS 200/12--10, 12--30 (West 2008)). 35 ILCS 200/9--75 (West 2008). Those notices--a public notice that must be issued by December 31 (35 ILCS 200/12--10 (West 2008)) and a notice mailed to the taxpayer (35 ILCS 200/12--30 (West 2008))--must, among other things, inform the taxpayer of the revision and of the right to appeal the revision. Before taxes are levied on the assessed value derived under section 9--155, the assessed value may be equalized under section 9--205 of the Code (35 ILCS 200/9--205 (West 2008)) to ensure parity among or within townships or to conform assessments to legal qualifications.

Sections 10--110 through 10--140 set out a different valuation and assessment process for farmland. Section 10--115 sets out a several-step process by which authorities use a five-year average of the net return on farmland (its income minus its costs) to calculate its "proposed agricultural economic value," which in turn must be converted to "the equalized assessed value" per acre of farmland based on soil productivity classifications in each county. See 35 ILCS 200/10--115 (West 2008). Farmland used for crops is then assessed based on that "equalized assessed value." 35 ILCS 200/10--125(a) (West 2008).

Eligibility for the farmland valuation and assessment procedure is governed by section 10--110, which provides that "[t]he equalized assessed value of a farm, as defined in Section 1--60 and if used as a farm for the 2 preceding years, *** shall be determined as described in Sections 10--115 through 10--140." 35 ILCS 200/10--110 (West 2008). (Section 1--60 sets forth the definition of a farm as "any property used solely" for various farm activities. 35 ILCS 200/1--60 (West 2008).) The

parties to this appeal disagree as to precisely what this language requires: petitioners argue that property need have been used as a farm only for the two prior years in order to qualify for farmland valuation and assessment, while respondents argue that the land must be used as a farm also during the assessment year.

We agree with respondents' reading of the statute. The above-quoted language confers farmland valuation on "a farm, *** and if used as a farm for the 2 preceding years." As respondents point out, unless doing so would frustrate legislative intent, courts generally understand the "use of the word 'and' between two statutory elements [to] indicate[] that both of the elements must be satisfied in order to comply with the statute." County of Du Page v. Illinois Labor Relations Board, 231 Ill. 2d 593, 606 (2008). In the passage at issue, the word "and" links two statutory elements: the element that the property be "a farm," as that term is defined elsewhere in the Code, and the element that the property have been used as a farm for the two preceding years. This language, then, requires both use as a farm during the assessment year and use as a farm for the two preceding years.

Petitioners urge a contrary reading of the statute's plain language on several grounds. First, petitioners invoke section 9--155, the section of the Code that deals with valuation and assessment generally, to argue that the determination as to whether property is farmland must be made as of January 1. The statutory language on which petitioners rely, quoted above, provides that the assessor should "determine as near as practicable the value of each property listed for taxation as of January 1 of that year ***, and assess the property at 33⅓% of its fair cash value, or in accordance with Sections 10--110 through 10--140." 35 ILCS 200/9--155 (West 2008). Petitioners argue that section 9--155 thus "specifically ties farmland assessments to the 'as of January 1' assessment date." We disagree. Under our reading of section 9--155, the legislature set out distinct tracks, separated by the disjunctive "or," for valuation and assessment of farm property and of property generally. Thus, the

assessor may "determine *** the value *** as of January 1 *** and assess the property at 33⅓%" (the first track, for property generally) "or" the assessor may value and assess the property "in accordance with Sections 10--110 through 10--140" (the second track, for farmland). 35 ILCS 200/9--115 (West 2008). This second, farmland track is not tethered to the January 1 valuation date. Indeed, such a valuation date would make no sense under the statutory farmland valuation and assessment scheme, which determines value not by estimating the cash value of the property, but rather by using a formula based on a five-year average of farm income for each soil productivity classification. See 35 ILCS 200/10--115 (West 2008).

The second reason petitioners offer for their contrary reading rests on the interpretive principle of expressio unius est exclusio alterius. That principle holds that "the enumeration of one thing in a statute implies the exclusion of all others" (Baker v. Miller, 159 Ill. 2d 249, 260 (1994)). Petitioners assert that the Code enumerates only two exceptions to the rule that an assessment should be based on valuation as of January 1; section 9--180 of the Code allows for pro-rata, or proportional, changes in valuation in the event of either the construction of new buildings or the destruction of buildings. 35 ILCS 200/9--180 (West 2008). The difficulty with petitioners' second reason is the same as the difficulty with their first: the language they cite pertains to the valuation and assessment procedures for property generally, not to the procedures for farmland.[2]

---

[2]Although they provide no analysis of the case, petitioners cite In re Application of Rosewell, 120 Ill. App. 3d 369 (1983), in their discussion of the expressio unius principle. In Rosewell, the court held that the classification of property for purposes of a county classification ordinance (which imposed different assessment levels for different classifications of property) must be determined as of January 1 of the assessment year, because that type of classification was not among the Code's

The third reason petitioners offer for their interpretation of the statute is their reading of the overarching legislative intent underlying the Code. Citing Paciga v. Property Tax Appeal Board, 322 Ill. App. 3d 157, 162 (2001), petitioners argue that the legislature enacted additional sections of the Code with the express purpose of "prevent[ing] developers from having to pay increased taxes on farmland or vacant land in the beginning of the development process." Petitioners are correct that we have interpreted section 10--30 of the Code (35 ILCS 200/10--30 (West 2008)) to protect developers from increases in property taxes just after they purchase former farmland but before they are able to finish development and begin to sell lots. See Paciga, 322 Ill. App. 3d at 162-63. However, petitioners by their own admission do not qualify for special treatment under section 10--30. The public policy they cite could be read to support an expansive interpretation of section 10--30, but their public policy statements are irrelevant where, as they concede, section 10--30 cannot apply.

Petitioners' fourth, and final, argument regarding the interpretation of the statute combines two more principles of statutory construction: the ideas that a statute should be read as a whole (Paris v. Feder, 179 Ill. 2d 173, 177 (1997)) and that a court should not interpret a statute to allow an absurd result (Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000)). Petitioners direct us to section 9--175 of the Code, which dictates that "[t]he owner of property on January 1 in any year shall be liable for the taxes of that year." 35 ILCS 200/9--175 (West 2008). Based on this provision, they argue that a rule allowing farmland status to be determined after

_____

limited exceptions to the January 1 valuation rule. Here, however, we hold that the January 1 valuation rule does not apply because the farmland valuation rules apply instead. Thus, an exception is not required.

January 1 could cause an owner who sold property midyear to suffer increased tax liability due to the subsequent actions of the purchaser. We do not agree that this result is absurd; it seems a rational means of providing needed administrative convenience for assessing bodies. It also seems quite rational that a property owner who is receiving special valuation and assessment would realize that he sells his property with the risk that the new owner will not qualify for the same favorable tax treatment. Sellers in real estate transactions may accept this risk or negotiate whatever terms they deem necessary to manage its effect. Further, the alternative interpretation petitioners espouse--that under the Code land may be considered farmland, even if it is not actually farmland, because it has been farmland in the past--seems to us more absurd than the scheme we describe above.

Indeed, our courts have long held that property cannot qualify for farmland valuation under the Code unless it has "present use" as farmland, even when the Code has contained the same January 1 tax liability provision. In Santa Fe Land Improvement Co. v. Illinois Property Tax Appeal Board, 113 Ill. App. 3d 872 (1983), the Third District considered an appeal in which the landowner sought valuation and assessment as agricultural land for the 1978 tax year despite indications that the owner intended to use the land for industrial purposes. The court concluded that "it is the use of real property which determines whether it is to be assessed at an agricultural valuation" and that "the present use of land determines whether it receives an agricultural or nonagricultural valuation." Santa Fe, 113 Ill. App. 3d at 875. Accordingly, since the land in Santa Fe was agricultural, and had not been turned into an industrial site in the assessment year, the court held that the owner was entitled to agricultural valuation. Santa Fe, 113 Ill. App. 3d at 875. In so holding, the court rejected the position that the Code allowed for "transitional" valuation periods; it held that a "recapture" provision in the Code, which retroactively imposed three years' full tax on property that ceased to

be farmland (Ill. Rev. Stat. 1975, ch. 120, par. 501a--3) "illustrated" that the Code based its classifications on present use. Santa Fe, 113 Ill. App. 3d at 875.

Santa Fe supports our interpretation of the Code for two reasons. First, Santa Fe is precedent that coincides with our interpretation, and no court has overruled it. Its holding has also not been repudiated by the legislature. "Where terms in a statute have acquired a settled meaning in judicial construction, the legislature will be presumed to know and adopt that construction unless it clearly indicates otherwise." Du Page County Airport Authority v. Department of Revenue, 358 Ill. App. 3d 476, 490 (2005). Although the Code has been amended since 1975 (the Code year applied in Santa Fe), we see nothing in those amendments to indicate an intent to overrule Santa Fe.

In 1975, the Code's provision on farm valuation and assessment applied to "real property which is used for farming or agricultural purposes and has been so used for the 3 years immediately preceding the year when the assessment is made" (Ill. Rev. Stat. 1977, ch. 120, par. 501a--1), a formulation that plainly requires that the present use be as a farm. The legislature later amended the Code to excise this section, as well as the section that set forth the "recapture" provision described in Santa Fe. Pub. Act 83--347, §1, eff. September 14, 1983 (repealing Ill. Rev. Stat. 1981, ch. 120, pars. 501a--1 through 501a--3). At roughly the same time, the legislature moved all Code provisions governing farmland assessment and valuation to section 20e of the Code (Ill. Rev. Stat. 1983, ch. 120, par. 501e). Pub. Act 82--121, §1, eff. August 11, 1981; Pub. Act 82--1028, §1, eff. January 1, 1983; Pub. Act 82--1033, §1, eff. December 22, 1982. Section 20e's new statutory provisions regarding farmland had no recapture provision, but they applied farmland valuation to "real property constituting a 'farm' *** which has been used as a farm for the two preceding years." Ill. Rev. Stat. 1983, ch. 120, par. 501e.

Even though <u>Santa Fe</u> relied on the "recapture" provision of the 1977 version of the Code, we do not interpret the legislature's repeal of that provision as indicating the required clear intent to overrule <u>Santa Fe</u>, for two reasons. First, the recapture provision, although relied on in <u>Santa Fe</u>, was attenuated from the question of whether farmland must be farmland in the tax year at issue. Thus, the legislature's removing the recapture provision--a provision it could have reconsidered for a number of reasons unrelated to <u>Santa Fe</u>--does not constitute a direct comment on <u>Santa Fe</u>'s holding. Cf. <u>Du Page County Airport Authority</u>, 358 Ill. App. 3d at 496 (change to a definition in the Airport Authorities Act "too far attenuated" from the Code to indicate a legislative intent to overrule case law interpreting the Code). Second, although the legislature removed the recapture provision, it included language that quite clearly indicates an intent that present use and two years' prior use as a farm were both required to qualify property for farmland valuation and assessment. In the new language, the legislature applied farmland valuation to "real property <u>constituting</u> a 'farm' *** which has been used as a farm for the two preceding years." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 120, par. 501e. Far from indicating an intent to overrule <u>Santa Fe</u>, this "constituting a farm" language actually indicates an intent to follow it.

The legislature later amended the Code's farmland valuation procedures once more (see Pub. Act 88--455, art. 10, §§10--100 through 10--145, eff. January 1, 1994), this time to divide them into several sections. That amendment changed the "constituting a farm" language to the language used in the current version of the Code. See 35 ILCS 200/10--110 (West Supp. 1993) ("The equalized assessed value of a farm, as defined in Section 1--60 and if used as a farm for the 2 preceding years, *** shall be determined as described in Sections 10--115 through 10--140"). In this context, the current language appears to mark no substantive departure from the former version. Thus, in total, we see nothing to indicate that the legislature has acted to repudiate <u>Santa Fe</u>'s holding that property

must have a present use as a farm in order to qualify for farmland valuation and assessment under the Code.

The second, and closely related, reason Santa Fe supports our ruling is that, in the time since Santa Fe was decided, the legislature has had ample opportunity to overrule it. As respondents observe in their briefs, the Third District's statement in Santa Fe that "present use" controls the classification of farmland under the Code has been repeated many times in our case law. See Senachwine Club v. Putnam County Board of Review, 362 Ill. App. 3d 566, 568 (2005); Bond County Board of Review v. Property Tax Appeal Board, 343 Ill. App. 3d 289, 292 (2003); Kankakee County Board of Review v. Property Tax Appeal Board, 305 Ill. App. 3d 799, 802 (1999); Du Page Bank & Trust Co. v. Property Tax Appeal Board, 151 Ill. App. 3d 624, 627 (1986). Two of these decisions applied the "present use" requirement. See Bond County Board of Review, 343 Ill. App. 3d at 293 ("If the subdivided farmland continues to be used as a farm, *** then it shall be assessed as a farm ***. [Citation.] If the subdivided farmland's use changes to residential, *** then the assessor shall reassess the land as residential ***"); Du Page Bank & Trust Co., 151 Ill. App. 3d at 627 ("No evidence was presented to establish that the property had been farmed in 1981, the tax year in question"). However, as discussed above, the legislature has not acted to repudiate the statement. Where judicial interpretation of a statute has not evoked an amendment, the legislature will be presumed to have acquiesced in the interpretation. People v. Marker, 233 Ill. 2d 158, 178 (2009), citing People v. Downs, 371 Ill. App. 3d 1187, 1191 (2007). The fact that the legislature has let these cases stand further indicates that their interpretations match legislative intent.

Petitioners also argue that, if our interpretation is correct, the Code's treatment of the subject property is unconstitutional for two reasons. First, they assert that the higher assessment violates the uniformity clause of the Illinois Constitution. See Ill. Const. 1970, art. IX, §4 (real estate taxes "shall

be levied uniformly by valuation ascertained as the General Assembly shall provide by law").[3] However, as respondents observe, the uniformity clause prevents taxing officials from "valu[ing] the same kinds of properties within the same taxing boundary at different proportions of their true value." Walsh v. Property Tax Appeal Board, 181 Ill. 2d 228, 234 (1998). There is no allegation here that the relevant taxing bodies somehow taxed the subject property differently than other nonfarmland. We therefore reject petitioners' uniformity argument.

Petitioners' second constitutional argument is that the $3 million assessment for the subject property "is so extreme and excessive as to amount to an unconstitutional confiscation of [the] property." For this proposition, petitioners refer us to two Supreme Court cases: Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994), and Nichols v. Coolidge, 274 U.S. 531, 71 L. Ed. 1184, 52 S. Ct. 710 (1927). In Kurth Ranch, however, the Supreme Court held that a "tax" on the possession of dangerous drugs, imposed after a person's arrest for possession of drugs, was actually a punitive measure that violated constitutional protections against double jeopardy. Kurth Ranch, 511 U.S. at 777-85, 128 L. Ed. 2d at 777-82, 114 S. Ct. at 1944-49. Here, there is no allegation, or implication, that the tax was meant to be punitive, so Kurth Ranch has no application. Nichols, on the other hand, involved a tax the Supreme Court considered "so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment" (Nichols, 274 U.S. at 542, 71 L. Ed. at 1193, 52 S. Ct. at 714), but petitioners offer no argument why a

---

[3]Petitioners also reference the United States Constitution in their argument, but they make no effort to apply it separately from their uniformity argument. We therefore do not analyze any federal constitutional claims separately.

generally applicable property tax should be deemed so arbitrary and capricious here. We therefore reject petitioners' arguments that our interpretation of the Code is unconstitutional.

After we issued our opinion, petitioners filed a petition for rehearing raising several challenges to our holding. Petitioners subsequently moved to supplement the petition for rehearing with additional authority. We grant that motion. Many of the points petitioners raise, however, could have been raised in their initial briefs and were therefore forfeited. See 210 Ill. 2d R. 341(h)(7). We address only a couple of those points. First, petitioners argue at length that our decision allows a taxing body to select a "random" valuation day and that thus our holding violates the uniformity clause of the Illinois Constitution. We disagree with this interpretation of our decision. Our opinion holds that the definition of "farmland" requires use as a farm throughout the year. If property does not meet that definition, it will be taxed based on its value as of January 1 of that year. If property does meet that definition, it will be taxed based on the farmland-valuation formula.

Petitioners also argue in their petition for rehearing that our decision violates the uniformity clause by failing to set forth a valuation date for farm property. The problem with this argument is that it assumes the normal valuation process, which applies to nonfarmland. Under that process, the value of the nonfarmland is determined as of January 1, and the property owner is taxed accordingly. It makes sense that, in order for the tax to be uniform, the "as of" date used for valuation would have to be uniform. As we explain above, however, "a valuation date would make no sense under the statutory farmland valuation and assessment scheme, which determines value not by estimating cash value of the property, but rather by using a formula based on a five-year average of farm income for each soil productivity classification." Slip op. at 7.

Petitioners point out in their petition for rehearing that the statute governing coal assessments provides for just the type of valuation system they think should apply to farmland, but, notably, each of the sections of the coal statute they quote has language that differs from the farm statute we interpreted in our opinion. The fact that the coal statute explicitly lists the features that petitioners emphasize, while the farm statute does not, further supports our interpretation that the farm statute does not have those features.

For the foregoing reasons, we agree with the Board that petitioners' property was not entitled to valuation and assessment as farmland. We therefore confirm the Board's decision.

Confirmed.

BOWMAN and SCHOSTOK, JJ., concur.