# Illinois Official Reports

## Appellate Court

---

### *People v. Deleon*, 2015 IL App (1st) 131308

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD DELEON, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1308 |
| Filed | May 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-3145; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Michael Gentithes, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Mary A. Laird, Assistant State's Attorneys, of counsel), for the People |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, the trial court convicted defendant Leonard Deleon of unlawful sale or delivery of a firearm pursuant to section 24-3(A)(g) of the Criminal Code of 1961 (720 ILCS 5/24-3(A)(g) (West 2008)), which prohibits the delivery of "any firearm of a size which may be concealed upon the person, incidental to a sale, without withholding delivery of such firearm for at least 72 hours after application for its purchase has been made." At trial, the State's evidence showed that defendant had acted as the straw purchaser of a .40-caliber handgun for his friend at a store in Indiana. Defendant, at his friend's request, picked out the gun and paid for it with his friend's money. Four days later, defendant and his friend returned to Indiana, defendant picked up the gun, and defendant gave it to his friend after they returned to Illinois.

¶ 2     Defendant raises two issues on appeal. First, he claims that the State lacked jurisdiction to prosecute him because he purchased the firearm in Indiana and delivered it to his friend in Indiana. Second, he claims that the State failed to prove that he did not let the necessary 72-hour waiting period elapse before he delivered the gun to his friend.

¶ 3     As we explain more fully below, we reject defendant's contention that the State failed to prove its jurisdiction. Although the evidence showed that defendant initially purchased the gun in a store in Indiana, his transaction with his friend was not complete until they reached Illinois, where defendant was paid for his services as the straw purchaser and he delivered the gun to his friend.

¶ 4     However, we agree with defendant's claim that the State failed to prove his guilt beyond a reasonable doubt. Under section 24-3(A)(g), a defendant may not deliver a firearm to another person less than 72 hours after the defendant and that other person have reached an agreement to purchase the firearm. Here, the evidence unequivocally showed that defendant and his friend did not reach an agreement to purchase the firearm. Rather, they reached an agreement for defendant's services as the straw purchaser. Because the State failed to prove that fundamental element of its case, we reverse defendant's conviction.

¶ 5                                    I. BACKGROUND

¶ 6     Two witnesses testified at defendant's trial. Fred Smith, a salesman at Blythe's Sport Shop in Griffin, Indiana, testified that he sold a .40-caliber Smith & Wesson handgun to defendant on April 15, 2008. Defendant filled out the necessary paperwork for purchasing the firearm and paid for the gun on that date. Smith submitted defendant's information for a background check. On April 19, 2008, after waiting three days for the results of the background check, defendant returned to the store and Smith released the gun to him.[1]

¶ 7     Officer Larry Thomas of the Chicago police department testified that, in early 2011, he was investigating the .40-caliber handgun, which had been recovered in an unrelated case. On February 1, 2011, Thomas went to defendant's home in Crestwood, Illinois. Defendant

---

[1]Under federal law, a licensed gun dealer may not sell a firearm to an individual unless the individual either passes a background check or the dealer submits the individual's information for a background check and hears nothing for three business days. 18 U.S.C. § 922(t)(1) (2006). That federal law is unrelated to the 72-hour waiting period embodied in the state statute that is the subject of this appeal. See 720 ILCS 5/24-3(A)(g) (West 2008).

initially told Thomas that he had purchased three firearms in his lifetime, but that they had been stolen. But once Thomas asked defendant about the .40-caliber handgun specifically, defendant admitted that he had bought it for his friend Joseph Hill. Defendant told Thomas that he agreed to purchase the gun for Hill because Hill offered to pay him, and defendant needed the money. Defendant told Thomas that he purchased the gun from Blythe's, put it in the trunk of his car, and drove it to Calumet Park, Illinois, where he gave it to Hill.

¶ 8     The State also introduced a copy of defendant's handwritten statement, which he gave to Thomas at the police station. Prior to trial, defendant sought to suppress that statement but was unsuccessful, and defendant does not appeal the denial of his motion to suppress.

¶ 9     In his handwritten statement, defendant said that Hill approached him "about buying a gun for him." Defendant said that he needed the money, and that Hill offered to give defendant money "for buying the gun for him."

¶ 10    Defendant said that he bought two guns for Hill. The first–not at issue in this case–was a .380-caliber handgun defendant bought for Hill in early 2008. He and Hill went to Blythe's. Hill pointed out the gun he wanted and gave defendant $400 to buy it. Defendant filled out paperwork to buy the gun and paid for it. After the three-day waiting period had passed, defendant and Hill returned to the store in separate vehicles. Defendant retrieved the gun and put it in the trunk of his car. Shortly after leaving Blythe's, defendant and Hill pulled over to the side of the road and defendant put the gun in the trunk of Hill's car. He and Hill then drove separately back to Calumet Park, where Hill paid defendant $200.

¶ 11    According to his written statement, defendant bought the second gun–the one at issue in this case–"a few months later." Hill asked defendant "to buy him another gun"; specifically, a .40-caliber handgun. Thus, on April 15, 2008, defendant and Hill returned to Blythe's, where Hill pointed out the .40-caliber handgun he wanted. Defendant and Hill then left the store, and Hill gave defendant money to purchase the gun. Defendant went back into Blythe's, filled out the paperwork for the gun, and paid for it. Four days later, on April 19, 2008, defendant and Hill returned to Blythe's in the same car. Defendant did not specify who owned the car. Defendant picked up the gun and put it in the trunk of the car. He and Hill then drove back to Hill's mother's house in Calumet Park. Hill gave defendant $200 "for buying the gun for him" and Hill "kept the gun."

¶ 12    In its closing argument, the State asserted that defendant had violated section 24-3(A)(g) because he delivered the gun to Hill on April 19, 2008 without waiting 72 hours as required by the statute. According to the State, defendant failed to wait an additional 72 hours to deliver the gun to Hill after defendant picked up the gun at Blythe's on April 19, 2008. Defendant argued that the State did not prove that it possessed jurisdiction to prosecute him, where the transaction occurred mostly in Indiana. Defendant also argued that he did wait 72 hours to deliver the gun because he initially agreed to purchase the gun no later than April 15, 2008, but did not give it to Hill until April 19, 2008.

¶ 13    The trial court found that the State had proved defendant guilty beyond a reasonable doubt, stating, "There is a series of transactions. The transaction period took [72] hours, the actual transfer. This is all a lot of unified[ ] commercial code coverage and everything like that. It is certainly within the purview [of the statute]." The court noted that it would "be enlightened to see how courts of review" would resolve defendant's arguments. The trial court sentenced defendant to one year of incarceration. Defendant appeals.

## II. ANALYSIS

### A. Jurisdiction

Defendant claims that the State failed to prove that it possessed jurisdiction to prosecute him for this offense because he bought the gun in Indiana and gave the gun to Hill in Indiana. The State claims that it proved its jurisdiction because the transaction was not complete until Hill took possession of the gun in Calumet Park and paid defendant $200. The State also notes that the gun was ultimately recovered in Chicago, Illinois, during a police investigation of other criminal activity.

The parties dispute the proper standard of review for this issue. Defendant contends that we should apply *de novo* review because the existence of jurisdiction is a question of law. The State contends that, because we are reviewing the sufficiency of the evidence regarding jurisdiction, we should apply the deferential standard applicable to sufficiency-of-the-evidence claims. We do not need to decide this issue, however, because under either standard, the State proved that it had jurisdiction to prosecute defendant. See *People v. Torres*, 2012 IL 111302, ¶ 46 (declining to resolve argument over proper standard of review where outcome of case would be same regardless of which standard applied).

The State of Illinois possesses jurisdiction to prosecute an individual for an offense he commits, "while either within or outside the State," if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5(a)(1) (West 2008). An offense will be considered to have been committed partly in Illinois "if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State." 720 ILCS 5/1-5(b) (West 2008). When interpreting this statute, we must keep its purpose in mind: "[T]o establish a broad jurisdictional basis for the prosecution in Illinois of offenses involving persons, property, and public interests in the State ***." *People v. Caruso*, 119 Ill. 2d 376, 382 (1987).

Where an act is performed outside Illinois, but the actor intends to produce a negative effect in Illinois, Illinois possesses jurisdiction to prosecute the actor. *Caruso*, 119 Ill. 2d at 382. For example, in *People v. Govin*, 213 Ill. App. 3d 928, 933-34 (1991), this court held that Illinois had jurisdiction to prosecute the defendant for controlled-substances trafficking because, although the defendant performed his acts entirely in Florida, he "aided and abetted a transaction by which cocaine was caused to be delivered in Illinois."

Here, like the defendant in *Govin*, defendant allegedly committed an act which caused a firearm to be unlawfully delivered to Hill in Illinois. Although defendant purchased the firearm in Indiana, his transaction with Hill was not complete until he drove back to Illinois with Hill, received $200 from Hill, and gave the gun to Hill. Moreover, the negative effects of defendant's alleged offense occurred in Illinois because Hill kept the gun in Illinois, where the police later recovered it. Illinois has a public interest in preventing firearms from being unlawfully transferred in its borders. Therefore, the State possessed jurisdiction to prosecute defendant.

Defendant claims that he actually delivered the gun to Hill in Indiana because he placed it in the trunk of a car in which both he and Hill were riding. Defendant cites the definition of "delivery" as it is used in the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2008)): "[T]he actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 ILCS 570/102(h) (West 2008). According to defendant, when he placed the gun in the trunk

of the car in Indiana, he and Hill had joint possession of the firearm. Thus, defendant claims that he had completed his "delivery" of the firearm in Indiana, as he transferred possession from his sole possession to his and Hill's joint possession.

¶ 22 We disagree that the evidence showed that defendant delivered the firearm to Hill in Indiana. Joint possession arises where two or more people share immediate and exclusive control of an item, or share the intention and power to exercise control. *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000). There was no evidence tending to show that Hill had either the ability or the intent to control the firearm while he was in the car. Until defendant had been paid and Hill "kept" the gun in Illinois, their transaction had not been completed. Up to that point, the gun was defendant's: he, not Hill, had engaged in the transaction to purchase the gun in Indiana, it was registered in defendant's name, and defendant put it in the trunk of the car. The evidence established that defendant did not actually transfer possession of the gun until they reached Illinois.

¶ 23 Hill's mere proximity to the gun in the car did not establish his possession of the gun. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). Likewise, the fact that the gun was in the car with Hill–even if hypothetically the car was his and he was the driver, facts that are not in the record–did not prove that defendant had relinquished his sole possession of the gun. See, *e.g.*, *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17 (an individual's status as the owner or driver of a vehicle does not put him in possession of everything in the vehicle " 'when there are passengers present who may, in fact, be the ones in possession of the contraband' " (quoting *People v. Day*, 51 Ill. App. 3d 916, 918 (1977))). Because defendant did not deliver the firearm to Hill until they reached Illinois, his alleged offense was committed partly in Illinois. We hold that the State proved its jurisdiction to prosecute defendant.

¶ 24 B. Reasonable Doubt

¶ 25 Defendant also claims that the State failed to prove beyond a reasonable doubt that he and Hill entered into an agreement for the sale of a firearm. Defendant argues that the money he received from Hill "was merely compensation for his services as a straw-purchaser." Thus, he and Hill never had an agreement to purchase a firearm; they had an agreement that defendant, on Hill's behalf, would buy the gun from Blythe's in his name. The State contends that defendant and Hill reached an agreement as to the gun's purchase on April 19, 2008, the same day that defendant delivered the gun to Hill. Because defendant failed to wait 72 hours after that date to deliver the gun, he violated the statute in question.

¶ 26 In a criminal case, the State bears the burden of proving each element of a criminal offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). When reviewing the sufficiency of the State's evidence in a criminal case, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have concluded that the evidence sufficed to meet the elements of an offense. *People v. Fernandez*, 2014 IL 115527, ¶ 13.

¶ 27 Section 24-3(A)(g) provides that a defendant commits the offense of unlawful sale or delivery of firearms when he knowingly delivers "any firearm of a size which may be concealed upon the person, incidental to a sale, without withholding delivery of such firearm for at least 72 hours after application for its purchase has been made." 720 ILCS 5/24-3(A)(g) (West 2008). That section defines "application" as "when the buyer and seller reach an agreement to purchase a firearm." *Id.* Thus, the State must prove the following

elements in a prosecution under section 24-3(A)(g): (1) that the defendant knowingly delivered a firearm that was of a size that could be concealed upon someone's person; (2) that the delivery of that firearm was "incidental to a sale"; and (3) that the defendant did not wait at least 72 hours to deliver that firearm after reaching an agreement to sell that firearm to the buyer.

¶ 28    At first blush, one might think that this statute–especially given its use of the phrase "application for *** purchase"–is aimed solely at retail sales of firearms. 720 ILCS 5/24-3(A)(g) (West 2008). We held otherwise 24 years ago in *People v. Hurtado*, 208 Ill. App. 3d 110, 115 (1991), where we reasoned that the statute applies to any "person" who delivers a firearm without waiting the requisite time period. Because the word "person" includes individuals, we held that this statute was not limited to gun shops or other retail sellers–it could include a transaction between two private individuals in a nonretail setting. *Id*. Defendant does not argue that this statute was improperly applied to him. Nor has the General Assembly seen fit to change *Hurtado*'s interpretation, even though it has amended the statute in other ways, including an amendment in 2005 to provide a definition of "application" to mean "when the buyer and seller reach an agreement to purchase a firearm." Pub. Act 94-284, § 10 (eff. July 21, 2005) (amending 720 ILCS 5/24-3(A)(g) (West 2004)). The legislature is presumed to acquiesce in a judicial interpretation of a statute where it does not amend the law in response to that interpretation. *People v. Marker*, 233 Ill. 2d 158, 178 (2009); *Oakridge Development Co. v. Property Tax Appeal Board*, 405 Ill. App. 3d 1011, 1020 (2010).

¶ 29    Thus, it is undisputed that this section, as clumsy as its application might seem to the facts of this case, validly applies to gun sales between private parties. But the State still has to prove that a sale took place between those two private parties–in this case, between Hill and defendant–because without that agreement to purchase, no 72-hour clock begins to run. The crime under this statute is not selling a gun or even delivering a gun; it is delivering a gun to the buyer, incidental to a sale, less than 72 hours after the "agreement to purchase a firearm" was made. 720 ILCS 5/24-3(A)(g) (West 2008). Thus, among other things, the State must prove that an "agreement to purchase" the gun took place between Hill and defendant, *and* that it took place within 72 hours of the delivery of the gun to the buyer. *Id*.

¶ 30    The State claims that it proved precisely that. The State argues that the triggering event in the statute–the moment that "the buyer and seller reach an agreement to purchase a firearm"–took place on April 19, when Hill (the buyer) and defendant (the seller) returned to Blythe's, whereupon defendant took possession of the firearm and transferred it to Hill for the sum of $200. The State calls that transaction between Hill and defendant on April 19 a "sale." The State, in other words, sees two "sales" of the firearm in this case: first, when Blythe's sold the gun to defendant on April 15, contingent on defendant passing the background check; and second, when defendant re-sold the gun to Hill on April 19. Thus, the State's theory of the case is that defendant agreed to sell the gun to Hill on April 19 and immediately delivered it to him upon sale, without waiting 72 hours.

¶ 31    We disagree. We reject the State's contention that defendant and Hill, at any point in time, "reach[ed] an agreement to purchase" the gun that would trigger the waiting period in the statute. Rather, we find that defendant and Hill reached an agreement whereby defendant would provide his *services* as a straw purchaser to obtain the gun for Hill. Because an agreement to provide services is not an "agreement to purchase" a good, the transfer of the

weapon from defendant to Hill for the sum of $200 on April 19 did not trigger any waiting period at all. If any "agreement to purchase" the firearm took place in this case, it took place on April 15, when defendant filled out paperwork for the federal background check and paid Blythe's for the gun with Hill's money. But that was not an agreement to purchase between Hill and defendant; it was an agreement to purchase between *Blythe's* and defendant. The waiting period for *that* agreement to purchase would not apply to the delivery of the weapon from defendant to Hill–and even if it did, the delivery came on April 19, more than 72 hours after April 15. The State failed to prove its case beyond a reasonable doubt. Defendant's conviction must be reversed.

¶ 32    A review of the evidence leaves us with the undeniable conclusion that the transaction between defendant and Hill was an agreement for a service, not the sale of a good. In neither defendant's oral nor written statement to the police did he say that he agreed to sell Hill a gun. At every instance, he described the transaction as an agreement that he would buy a gun "for" Hill. Throughout his handwritten statement, defendant said that he agreed to purchase the gun "for" Hill. Hill offered to "give [defendant] money for buying the gun for [Hill]." He said that Hill gave him $200 "for buying the gun for [Hill]." Officer Thomas testified that defendant told him that Hill asked defendant "about buying the gun for him." Moreover, defendant's description of the transaction shows that he acted solely on Hill's behalf. When they went to Blythe's on April 15, 2008, Hill picked out the gun that "he wanted." Hill provided the money to pay for the gun.

¶ 33    That is the sum and substance of the evidence concerning the arrangement between defendant and Hill–defendant's oral statement to the officer and his handwritten statement. Not one word of it suggests that defendant was a "seller" and Hill was his "buyer." Everything about it suggests an agreement for services. Even the State, at oral argument, characterized this transaction as an illegal straw purchase, thus acknowledging that defendant was enlisted solely to act as a front for Hill, the ultimate recipient of the weapon. See *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 424 (3d Cir. 2002) (defining straw purchaser as "a friend, relative or accomplice who acts as the purchaser of [a] weapon for another").

¶ 34    While we must review the evidence in the light most favorable to the State, we will not blind ourselves to the obvious. This was not a situation where defendant bought the gun with his own money and then engaged in an independent, secondary buy-sell transaction with Hill. Nor is this a situation where defendant, in a moment of capitalistic impulse, took it upon himself to buy a gun legally and then offered it up to his friends, selling it to the highest bidder. Those fact patterns are not before us, and we express no opinion on the applicability of section 24-3(A)(g) to those facts. The facts in *this* case show that defendant did not select the gun for purchase, did not pay for it with his own money, and had no intention of ever possessing it beyond the time it took to acquire it from the gun store and hand it over to Hill in exchange for his commission. The $200 defendant received was for the *service* he performed, not the value (retail or otherwise) of the firearm.

¶ 35    Viewing all of the evidence in the light most favorable to the State, we are left with the inescapable conclusion that defendant and Hill were not a "buyer and seller" and did not, at any time, reach an "agreement to purchase" a firearm under section 24-3(A)(g). 720 ILCS 5/24-3(A)(g) (West 2008). Thus, no waiting period was triggered on April 19. Any "agreement to purchase" that may have taken place between Blythe's and defendant on April

15 is not applicable to the transaction between Hill and defendant, and even if it were, the 72-hour waiting period was satisfied. Under any conceivable view of the evidence, defendant did not violate this statute.

¶ 36    Though it is not necessary for us to reach our holding, we find support in cases where courts must decide whether an agreement has been made for goods or services. In those cases, Illinois courts apply the "predominant purpose" test. *Brandt v. Boston Scientific Corp.*, 204 Ill. 2d 640, 645 (2003). Under that test, we ask whether the contract was predominantly for goods and incidentally for services, or vice-versa. *Id.* Where the predominant purpose of a contract is the delivery of goods, we have held that the predominant purpose of the contract is for services rather than goods. For example, if a contractor agrees to lay brick in a house, even though that contractor additionally charges for the cost of the bricks used, the predominant purpose of that contract is the *service* of masonry. *Zielinski v. Miller*, 277 Ill. App. 3d 735, 740-41 (1995). See also *Heuerman v. B&M Construction, Inc.*, 358 Ill. App. 3d 1157, 1164-65 (2005) (contract for procurement and delivery of gravel was predominantly for services where contract's terms focused on type of delivery and majority of bill was for delivery rather than price of gravel).

¶ 37    If we were to apply the predominant-purpose test to this case, the evidence unequivocally showed that the primary purpose of the agreement between defendant and Hill was that defendant would provide his services as a straw purchaser. As we have already explained, the price of the good, the firearm, was not an integral part of the transaction and, as far as we can tell from defendant's statement, played no role whatsoever in the transaction between Hill and defendant. The price of the gun was paid by Hill, but it was not paid to defendant; it went to the gun shop, after passing through the hands of defendant as the front, the middleman. The service of acting as a straw buyer was not just the predominant purpose of the defendant-Hill transaction–it was the only purpose.

¶ 38    Our opinion should not be construed as giving a free pass to all individuals who act as straw purchasers of firearms in the State of Illinois. To the contrary, the offense of unlawful purchase of a firearm prohibits an individual from knowingly purchasing a firearm "with the intent to deliver that firearm to another person who is prohibited by federal or State law from possessing a firearm." 720 ILCS 5/24-3.5(b) (West 2008). We will not concern ourselves with why the State chose not to charge defendant under that statute. We only hold that where, as here, the evidence unquestionably shows that defendant merely provided the service of acting as a straw purchaser for another individual and did not "sell" the firearm to that individual, he did not violate section 24-3(A)(g). See 720 ILCS 5/24-3(A)(g) (West 2008).

¶ 39                                   III. CONCLUSION

¶ 40    For the reasons stated above, we reverse defendant's conviction for unlawful sale of a firearm. Although the State possessed jurisdiction to prosecute defendant, it failed to prove beyond a reasonable doubt that he was required to comply with the 72-hour waiting period in section 24-3(A)(g).

¶ 41    Reversed.