THE BOND COUNTY BOARD OF REVIEW, Plaintiff-Appellee, v. THE PROPERTY TAX APPEAL BOARD, Defendant-Appellant (Clarence H. Potthast, Jr., Defendant).

Fifth District    No. 5—02—0064

Opinion filed August 26, 2003.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellant.

Chris Bauer, State's Attorney, of Greenville (Norbert J. Goetten and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and David O. Edwards, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The Bond County Board of Review (Board of Review) petitioned the circuit court for administrative review, contesting the determination of the Illinois Property Tax Appeal Board (PTAB) that two parcels of land owned by Clarence H. Potthast, Jr., should be classified as farmland. The PTAB appeals the circuit court's decision classifying the parcels as residential. We reverse the decision of the circuit court and affirm the decision of the PTAB.

## FACTS

In 1974, Norbert and Margaret Zahner subdivided a nine-acre tract of land into three parcels, and the Bond County officials recorded the subdivision. The Zahners never improved the property for

residential use and subsequently sold two of the parcels, totaling 6.31 acres, to Clarence Potthast, Sr., who sold them to his son, Clarence H. Potthast, Jr., in 1994. From 1994 to 1999, Potthast prepared, planted, and harvested hay and stored hay and logs on the two parcels, using neither of the parcels for residential purposes.

For the 1999 assessment year, the Board of Review assigned to Potthast's property an assessed value of $4,619 for the four-acre parcel and an assessed value of $1,937 for the two-acre parcel, based on the parcels' highest and best use as rural residential lots. Potthast complained to the Board of Review that the parcels should be valued as farmland and not as residential property. The Board of Review affirmed the assessments, and Potthast appealed to the PTAB.

Before the PTAB, the Board of Review did not dispute Potthast's contention that he used the parcels as farmland and had done so for the previous five years. Instead, the Board of Review argued that, because the parcels were parts of a recorded subdivision, they were properly assessed as residential lots.

On August 23, 2000, the PTAB disagreed with the Board of Review and reclassified the property from residential to agricultural. On January 10, 2001, after receiving certified values from the Board of Review, the PTAB issued a final administrative decision indicating that Potthast's four-acre parcel should be valued at $180 and his two-acre parcel should be valued at $53.

On February 9, 2001, the Board of Review filed its complaint for administrative review in the Bond County circuit court. On December 19, 2001, the circuit court reversed the PTAB's decision, holding that sections 9—65 and 10—30 of the Property Tax Code (the Code) (35 ILCS 200/9—65, 10—30 (West 2002)), when construed together, mandate that the parcels be taxed as rural residential.

On January 18, 2002, the PTAB filed its notice of appeal.

## ANALYSIS

The PTAB asserts that because Potthast used the land for farming in 1999 and for many years prior to 1999, the property should be classified as agricultural. The Board of Review counters that because the property was subdivided, the property must be classified as rural residential.

■ This court gives substantial weight and deference to the statutory interpretations of an administrative agency charged with the statute's administration and enforcement. *Illinois Power Co. v. Illinois Commerce Comm'n*, 111 Ill. 2d 505, 510-11 (1986). The agency's interpretations, while not binding on courts, are considered an informed source for ascertaining the legislative intent because of the

agency's expertise and experience in enforcing the statute, and courts will rely on the agency's interpretation of the statute's meaning. *Illinois Power Co.*, 111 Ill. 2d at 511; *Grundy County National Bank v. Property Tax Appeal Board*, 297 Ill. App. 3d 774, 776 (1998).

■ "The primary rule of statutory interpretation and construction is to ascertain and effectuate the true intent and meaning of the legislature." *Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605, 616 (1989). When a statute has not been judicially interpreted, the reviewing court is guided by the plain meaning of the statute's language and the legislative intent. *Lake County Board of Review*, 192 Ill. App. 3d at 616-17.

■ Taxing laws are strictly construed and are not to be extended beyond the clear import of the language used. *Getto v. City of Chicago*, 77 Ill. 2d 346, 359 (1979). Any doubt of their application will be construed most strongly against the government and in favor of the taxpayer. *Getto*, 77 Ill. 2d at 359.

■ Section 10—110 of the Code provides, "The equalized assessed value of a farm, as defined in Section 1—60 [(35 ILCS 200/1—60 (West 2002))] and if used as a farm for the 2 preceding years ***, shall be determined as described in Sections 10—115 through 10—140 [(35 ILCS 200/10—115 through 10—140 (West 2002))]." 35 ILCS 200/10—110 (West 2002). Sections 10—115 through 10—140 set forth methods for valuing farm property. A farm is defined in section 1—60: "any property used solely for the growing and harvesting of crops[,] *** including, but not limited to, hay." 35 ILCS 200/1—60 (West 2002). The present use of land determines whether it is entitled to a farmland classification for assessment purposes. *Sante Fe Land Improvement Co. v. Illinois Property Tax Appeal Board of the Department of Local Government Affairs*, 113 Ill. App. 3d 872, 875 (1983).

In 1999, and in the two preceding years, Potthast used the property for agricultural purposes, to harvest hay; and generally, the parcels must be classified and valued according to their use as farmland. The Board of Review, however, contends that when section 9—65 of the Code is read in conjunction with section 10—30 of the Code, the assessor is mandated to increase Potthast's assessment from agricultural to rural residential use, even though the parcels were used for agricultural purposes. We disagree.

■ Section 9—65 of the Code states:

"Except as otherwise provided by Section 10—30 ***, whenever acreage property has been subdivided into lots and the subdivision has been recorded[,] the lots shall be reassessed and placed upon the assessor's books, replacing the acreage property, as of the first day of January immediately following the date of the recording or filing of the subdivision." 35 ILCS 200/9—65 (West 2002).

Section 10—30(a) of the Code states:

"(a) *** [T]he platting and subdivision of property into separate lots and the development of the subdivided property with streets, sidewalks, curbs, gutters, sewer, water[,] and utility lines shall not increase the assessed valuation of all or any part of the property, if:

(1) The property is platted and subdivided in accordance with the Plat Act [(765 ILCS 205/0.01 *et seq.* (West 2002))];

(2) The platting occurs after January 1, 1978;

(3) At the time of platting the property is in excess of 10 acres; and

(4) At the time of platting the property is vacant or used as a farm as defined in Section 1—60." 35 ILCS 200/10—30(a) (West 2002).

Section 9—65 requires that once acreage property has been subdivided into lots and the subdivision has been recorded, the assessor must reassess the lots, replacing the acreage property, by the first day of January following the date of the recording or filing of the subdivision. 35 ILCS 200/9—65 (West 2002); see *Kennedy Brothers, Inc. v. Property Tax Appeal Board,* 158 Ill. App. 3d 154, 164 (1987) (this section provides for the reassessment of acreage property that has been subdivided).

Nothing in the language of section 9—65 requires the assessor to ignore the present use of the property and automatically reassess subdivided agricultural property as residential. If the subdivided farmland continues to be used as a farm, as defined in section 1—60 of the Code, then it shall be assessed as a farm pursuant to section 10—110 of the Code. 35 ILCS 200/1—60, 10—110 (West 2002). If the subdivided farmland's use changes to residential, as is evidenced by the development of roads, sewers, etc., then the assessor shall reassess the land as residential, unless the taxpayer falls within the criteria enumerated in section 10—30 (35 ILCS 200/10—30 (West 2002)).

■ Section 10—30 of the Code was enacted to protect real estate developers, who change the use of property from farmland to residential or commercial or industrial use, from rising assessments that result from the initial platting and dividing of the farmland. *Kennedy Brothers, Inc.,* 158 Ill. App. 3d at 160; see 83rd Ill. Gen. Assem., House Proceedings, June 24, 1983, at 184 (statements of Representative Slape) (if a person buys more than 10 acres and puts in water lines, streets, or curb and guttering improvements, the assessment does not rise until he sells the lot).

Section 10—30(a), which involves "the platting and subdivision of property" in addition to "the development of the subdivided property" (35 ILCS 200/10—30(a) (West 2002)), presumes a change of use from

farmland to residential once a subdivision is combined with development. Section 10—30 protects the taxpayer, *i.e.*, the real estate developer, from an increased assessment, notwithstanding the change to residential use, if the taxpayer establishes the preferential property tax assessment criteria in section 10—30(a). See 35 ILCS 200/10—30(a) (West 2002). Section 10—30, in conjunction with section 9—65, allows a taxpayer to avoid an increased assessment even though the property has been developed with streets, sidewalks, water, etc. and its use has changed to residential. However, sections 9—65 and 10—30, when construed together, do not mandate an increased assessment for residential use if the property has not changed to residential use, has not been developed with streets, sidewalks, water, etc., and remains used for agricultural purposes.

Thus, section 9—65 leads to an increased assessment, based on a change of use from farmland to residential, whenever a subdivision of farmland coincides with the property's change to residential use, such as when the property is developed with roads, sidewalks, utility lines, water, curbs, gutters, and sewers, as provided in section 10—30. 35 ILCS 200/9—65, 10—30 (West 2002); see *Paciga v. Property Tax Appeal Board*, 322 Ill. App. 3d 157 (2001) (the developer subdivided the property and cut a road into the acres, thereby changing its use, but section 10—30(a) applied to prohibit an increased valuation); *Grundy County National Bank*, 297 Ill. App. 3d 774 (the property *had* been used for agricultural purposes at the time of subdivision, but the trustee purchased the property to develop into a residential subdivision, and a reclassification from farmland to residential was appropriate because the preferential property tax assessment under a previous version of section 10—30 did not apply).

■ In the present case, although the parcels had been platted and subdivided in 1974, prior to Potthast's purchase, the parcels had not been improved for residential use, *i.e.*, no one had developed the property with streets, sidewalks, curbs, gutters, sewer, water, or utility lines. See 35 ILCS 200/10—30 (West 2002). Since 1994, Potthast has continued to use the land for agricultural purposes. Accordingly, the assessor's office, in reassessing the property from acreage to lots, pursuant to section 9—65, was not required to ignore its agricultural use and reassess the property from agricultural to residential. See 35 ILCS 200/9—65 (West 2002).

We agree with the PTAB's decision and find that the parcels in question must be assessed as agricultural. We therefore reverse the circuit court's decision.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Bond County is reversed.

Reversed.

GOLDENHERSH and MAAG, JJ., concur.