MILL CREEK DEVELOPMENT, INC., Petitioner-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—02—0596

Opinion filed October 29, 2003.—Modified on denial of rehearing January 29, 2004.

George Michael Keane, Jr. (argued), of Chicago, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Brett E. Legner (argued), Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Jeff Tomczak, State's Attorney, of Joliet (Mary M. Tatroe (argued), Assistant State's Attorney, of counsel), for respondent Will County Board of Review.

JUSTICE LYTTON delivered the opinion of the court:

Petitioner, Mill Creek Development, Inc., challenged the year 2000 assessment of a 39.03-acre parcel of land in Homer Township. Prior to 2000, the property was classified as farmland and valued at $7,620. In 2000 the county reassessed the property as residential, and the valuation increased to $534,033. The Will County Board of Review upheld the assessment and the Property Tax Appeal Board (PTAB) affirmed the county's valuation. We confirm in part, set aside in part and remand, finding that part of the property should have been valued as farmland pursuant to the "developer's relief" section of the Property Tax Code. 35 ILCS 200/10—30(a) (West 2002).

In 1999, Mill Creek was planning to purchase a parcel of farmland and develop it into a residential subdivision. The farmland had an assessed value of $7,620. Mill Creek worked with the City of Lockport to prepare an annexation agreement, which was adopted in March 2000. In May of 2000, Mill Creek purchased the 39.03-acre tract of land. Shortly after the purchase, Mill Creek sold the southern 24.895 acres to M.C. Custom Homes. M.C. Custom Homes platted, subdivided and recorded the southern portion in July 2000. Mill Creek retained ownership of the northern acreage, but did not plat and subdivide it until June 2001.

On August 18, 2000, the Will County supervisor of assessments issued a notice of change of assessment on the property from $7,620 to $534,033. The notice indicated that the increase was based on a change of classification and usage because the land was not farmed in 2000.

Mill Creek petitioned the Will County Board of Review for relief from the assessment. The board upheld the assessment; Mill Creek appealed the matter to the Property Tax Appeal Board (PTAB), which affirmed the board's decision. Mill Creek then petitioned this court for administrative review.

## I

Since this issue is one of statutory interpretation, we review it under a *de novo* standard. See *City of Belvidere*, 181 Ill. 2d 191, 205

(1998). However, in arriving at our determination in this case, PTAB's determination will remain "relevant" to our analysis. See *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995).

■ Mill Creek argues that it is entitled to relief under section 10—30 of the Illinois Property Tax Code, which provides that the mere platting and subdividing of vacant land or farmland cannot increase the assessed valuation of the land. 35 ILCS 200/10—30(a) (West 2002). Mill Creek contends that it has met the conditions required under section 10—30 for relief.

The statute provides, in part:

> [T]he platting and subdivision of property into separate lots and the development of the subdivided property with streets, sidewalks, curbs, gutters, sewer, water and utility lines shall not increase the assessed valuation of all or any part of the property, if:
>
> (1) The property is platted and subdivided in accordance with the Plat Act [(765 ILCS 205/0.01 *et seq.* (West 2002))];
>
> (2) The platting occurs after January 1, 1978;
>
> (3) At the time of platting the property is in excess of 10 acres; and
>
> (4) At the time of platting the property is vacant or used as a farm ***." 35 ILCS 200/10—30(a) (West 2002).

PTAB concedes that the land meets all of the conditions except one: that the property be vacant or farmland when platted and subdivided.

The sole issue in this case is whether section 10—30 applies to this parcel. The southern portion of the parcel in question was platted and subdivided in June 2000, but the northern portion was not platted and subdivided until June 2001. Because the two portions were recorded in different years, we will discuss the effect of section 10—30 on each one separately.

## A. The Southern Portion

■ Statutory construction requires courts to ascertain and give effect to the purpose and intent of the legislature. *In re C.W.*, 199 Ill. 2d 198, 211 (2002). Two rules of construction guide our determination. First, while interpreting statutes, we must avoid any construction that would produce absurd results or render the statute meaningless. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Second, when choosing between two statutes in direct conflict, "the more recent enactment generally will prevail." *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282 (1994).

PTAB argues that a property's assessed value is determined on January 1 of the assessment year and that mid-year changes in property status are not considered until January of the following year. *In re Application of Rosewell*, 120 Ill. App. 3d 369, 373 (1983). Here,

however, Will County changed the status of plaintiff's property in August 2000 from farmland to residential, and then assessed the property as residential for all of 2000. That mid-year status change was treated as effective for the entire tax year of 2000. The notice of assessment change sent to Mill Creek by the county read, "[t]his notice is *** to inform you that the current year assessed value of the property *** is being changed."

■ Development of farmland will ordinarily cause an assessor to change the status of the land to residential. A property's assessed value is determined on January 1 of the assessment year, and any changes in status are applied from that date. *In re Application of Rosewell*, 120 Ill. App. 3d 369, 373 (1983). Thus, property that is residential when platted and subdivided is subject to the increased assessment from January 1 forward. However, section 10—30 indicates that the platting, subdividing and development of farmland or vacant land stays any increased assessment until actual construction of a residence is completed or commercial or business use begins. 35 ILCS 200/10—30(a) through (c) (West 2002).

PTAB argues that section 10—30 does not apply because the land was reclassified by the assessor in the same calendar year that it was platted and subdivided. According to PTAB, when the property was reassessed, the land officially became residential, not farmland, for the entire year 2000. Then, one of the criteria listed in 10—30, that the land be vacant or farmland when platted and subdivided, was not met. We disagree.

Under PTAB's interpretation of the statute, the Will County assessor can reclassify land after it has been platted and subdivided and deny a developer any benefit under section 10—30. Since the reclassification reached back to January 1, the developer would be in a race to the courthouse that it could never win. This construction of section 10—30 strips the statute of any meaning or import.

■ The statute says that platting and subdividing land shall not increase the assessed valuation if "at the time of platting the property is vacant or used as a farm." 35 ILCS 200/10—30(a)(4) (West 2002). Consequently, we hold that, although the assessor reclassified the land to residential in the same year that it was platted and subdivided, the tax valuation must remain at its prior assessment level until development has occurred pursuant to section 10—30(c). Any other result renders section 10—30 meaningless, defeating the legislative intent of the statute. See *Paciga v. Property Tax Appeal Board*, 322 Ill. App. 3d 157 (2001) (finding that section 10—30 was passed to protect developers from increased tax valuations until they have time to develop the land and profit from the sale of individual lots).

■ In this case, the land was farmed through 1999. Mill Creek purchased the property in May 2000 and sold it to M.C. Custom Homes, which recorded its plat in July 2000. Thus, when the assessor changed the status of the property in August 2000, the southern portion had already been platted and subdivided. Since the portion of the property platted in 2000 meets all the criteria in section 10—30, it must be assessed at the farmland valuation. In order to give any effect to the statute, Mill Creek cannot be held liable for increased taxes resulting from the change in assessment.

PTAB argues that our decision improperly forces the retroactive application of section 10—30, because it inevitably moves the date of platting and subdividing to January 1 of the current year. We believe, however, that the statute simply applies when its conditions are satisfied. The only relevant date with respect to section 10—30 is the date upon which the land is platted and subdivided. If, on the date, the four criteria in the statute are met, the developer will be eligible for the statutory relief.

PTAB cites us to section 9—65 of the tax code, which mandates that when property is platted and subdivided, it does not replace the individual acreage on the assessor's books until January 1 of the following tax year. 35 ILCS 200/9—65 (West 2000). Thus, section 9—65 would prohibit Mill Creek from recognizing the benefit of section 10—30 until January 1 of 2001.

We disagree with this argument. Though section 9—65 governs the placement of new subdivisions on the assessor's tax rolls, it has no bearing on the relief accorded by section 10—30. Section 10—30 provides relief for the developer if the property meets the criteria on the day it is platted and subdivided, not on the day the subdivision appears on the tax rolls.

## B. The Northern Portion

■ The whole parcel was reclassified as residential in August 2000. While the southern portion was platted in July 2000, the developer did not plat and subdivide the northern portion of the land until June 2001.

The key to obtaining relief under section 10—30 is platting and subdividing farmland or vacant land. Both portions of the land were reclassified as residential in 2000. The southern portion was still farmland when it was platted, and the statute applies; however, when the northern portion was platted and subdivided in 2001, it was residential, not farmland. Since it was residential when platted, the northern portion does not fall under the statute's protection. The northern portion is subject to the increased assessment.

This result is consistent with legislative intent as it protects those developers who timely plat and subdivide property for residential development. Developers who plat and subdivide land beyond the year in which it is reassessed risk losing the benefit afforded by the statute. Thus, while timely developers are protected, assessors are not indefinitely or unfairly prevented from reclassifying property and collecting increased taxes.

## II

Mill Creek also challenges the assessed value of the property. At the administrative hearing, PTAB affirmed the county's assessment. When reviewing an administrative decision, we accept the agency's findings as *prima facie* true and correct, and we will not disturb that decision unless it is against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

In determining the assessment, the board of review used comparable local market values to establish a range of property values. The assessed value of Mill Creek's property fell within that range. Indeed, the assessed value was actually $2,728.56 per acre less than the purchase price. Our careful review of the record reveals that PTAB's determination was thorough and accurate; Mill Creek has failed to show that the decision was against the manifest weight of the evidence.

## CONCLUSION

The decision of the Property Tax Appeal Board is confirmed in part, set aside in part, and the cause is remanded.

Confirmed in part, set aside in part and remanded.

SCHMIDT and SLATER, JJ., concur.