**Illinois Official Reports**

*Sycamore Community Unit School District No. 427 v.*
*Illinois Property Tax Appeal Board*,
**2014 IL App (2d) 130055**

| | |
|---|---|
| Appellate Court Caption | SYCAMORE COMMUNITY UNIT SCHOOL DISTRICT NO. 427, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD, AMERICAN NATIONAL BANK TRUST NO. 2567, and KEVIN DAHL, Respondents.–SYCAMORE COMMUNITY UNIT SCHOOL DISTRICT NO. 427, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD, AMERICAN NATIONAL BANK TRUST NO. 2567, and KEVIN DAHL, Respondents.–DE KALB COUNTY BOARD OF REVIEW, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD, AMERICAN NATIONAL BANK TRUST NO. 2567, and KEVIN DAHL, Respondents.–DE KALB COUNTY BOARD OF REVIEW, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD, AMERICAN NATIONAL BANK TRUST NO. 2567, and KEVIN DAHL, Respondents. |
| District & No. | Second District<br>Docket Nos. 2-13-0055, 2-13-0056, 2-13-0077, 2-13-0078 cons. |
| Filed | June 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent Property Tax Appeal Board erred in applying the developer's relief provision of the Property Tax Code to allow respondent developer's property to enjoy a farmland classification with a reduced assessed value for real estate tax purposes pending development with a habitable structure, since the developer's property in the instant case was reclassified from farmland to nonfarmland with an increased assessed value in 2006 and although the developer "believed" the plat of the property had been recorded prior to the change in the classification, the plat showing the subdivision of the property into lots and streets suitable for development was not recorded until 2007, after the reclassification, and under those circumstances, the assessment increase was not caused by the platting and the developer's relief provision did not apply. |

| Decision Under Review | Petition for Review of Order of Illinois Property Tax Appeal Board, Nos. 08-03345.001-C-3, 08-03345.002-C-3, 08-03345.003-C-3, 08-03345.004-C-3, 08-03345.005-C-3, 09-03144.001-C-3, 09-03144.002-C-3, 09-03144.003-C-3, 09-03144.004-C-3, 09-03144.005-C-3. |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kenneth M. Florey and Scott L. Ginsburg, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for petitioner. |
|  | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board. |
|  | Kevin P. Burke, of Smith, Hemmesch, Burke & Kaczynski, of Chicago, for respondents American National Bank Trust No. 2567 and Kevin Dahl. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. <br> Justices Zenoff and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    On December 21, 2012, respondent the Illinois Property Tax Appeal Board (PTAB) issued two separate, yet substantively identical, decisions, reducing the 2008 and 2009 property tax assessments of five vacant parcels in De Kalb County, owned by respondent Kevin Dahl (through respondent American National Bank Trust No. 2567). Petitioners, the De Kalb County Board of Review (Board) and Sycamore Community Unit School District No. 427 (School District), appeal those decisions. Because the PTAB decisions involved an assessed valuation of greater than $300,000, from which the taxes would be calculated, the appeal was brought directly to the appellate court. 35 ILCS 200/16-195 (West 2012). The Board and the School District argue that the PTAB erred in applying section 10-30 of the Property Tax Code (35 ILCS 200/10-30 (West 2006)), which is known as the developer's relief provision. We agree that the developer's relief provision does not apply to the property,

because the property was platted *after* it was reclassified as nonfarmland rather than farmland. We reverse and remand.

## I. BACKGROUND

This case turns on the application of the developer's relief provision, which states:

> "(a) In counties with less than 3,000,000 inhabitants, *the platting and subdivision of property* into separate lots and the development of the subdivided property with streets, sidewalks, curbs, gutters, sewer, water and utility lines *shall not increase the assessed valuation of all or any part of the property*, if:
>
> (1) The property is platted and subdivided in accordance with the Plat Act;
>
> (2) The platting occurs after January 1, 1978;
>
> (3) At the time of platting the property is in excess of 10 acres; and
>
> (4) At the time of platting the property is vacant or used as a farm as defined in Section 1-60.
>
> (b) Except as provided in subsection (c) of this Section, the assessed valuation of property so platted and subdivided shall be determined each year based on the estimated price the property would bring at a fair voluntary sale *for use by the buyer for the same purposes for which the property was used when last assessed prior to its platting*.
>
> (c) Upon completion of a habitable structure on any lot of subdivided property, or upon the use of any lot, either alone or in conjunction with any contiguous property, for any business, commercial or residential purpose, or upon the initial sale of any platted lot, including a platted lot which is vacant: (i) the provisions of subsection (b) of this Section shall no longer apply in determining the assessed valuation of the lot, (ii) each lot shall be assessed without regard to any provision of this Section, and (iii) the assessed valuation of the remaining property, when next determined, shall be reduced proportionately to reflect the exclusion of the property that no longer qualifies for valuation under this Section. Holding or offering a platted lot for initial sale shall not constitute a use of the lot for business, commercial or residential purposes unless a habitable structure is situated on the lot or unless the lot is otherwise used for a business, commercial or residential purpose." (Emphases added.) *Id*.

See Pub. Act 95-135, § 5 (eff. Jan. 1, 2008) (amending the size requirement in subsection (a)(3) from 10 acres to 5 acres).

For the most part, the parties agree on the facts, as recounted in the PTAB decision and contained in the record. Dahl, an individual real estate developer, owns the subject property. The property consists of 5 vacant parcels,[1] which total 26.81 acres. It is located in a commercial subdivision known as Townsend Woods, on Route 23, a few blocks north of downtown Sycamore. It is bordered on two sides by a residential subdivision and on the

---

[1] Initially, the property consisted of two parcels (Nos. 06-29-426-008 and 009). However, subsequent platting in 2007 caused the two parcels to become five parcels (Nos. 06-29-427-001, 002, 003, 004, and 06-29-477-002).

remaining side by a public soccer field. A School District "property" is across the street. In recent years, Dahl's property has been listed for sale with an asking price of over $6 million.

¶ 5 From 2001 to 2004, Dahl contracted with two local farmers to use the property as farmland. The farmers reported to Dahl that the land was "difficult to farm" and they would prefer not to farm it. In 2005, Dahl received several letters of intent to buy the property, so Dahl ceased farming and began development, such as installing piping. Dahl *believed* that, in accordance with the developer's relief provision, he had recorded a platting and subdivision of the property, but, as he would find out two years later, he had not. Between 2001 and 2005, the property was classified as farmland and taxed at the preferential rate given to farmland that has been used as such for the preceding two years. 35 ILCS 200/10-110 *et seq.* (West 2006). The tax assessment value, or assessed value, which is different from market value, was $18,743,[2] and the taxes derived from this figure were comparatively negligible (*i.e.*, well under $1,000).

¶ 6 In 2006, the assessor reclassified the property as vacant nonfarmland and assessed the parcels at "the next highest and best use," that being market value for commercial land. The reclassification was based on there having been no farming on the property in 2005 or 2006 and the marketing of the property as commercial land. The reclassification led to a new assessed value of $1,424,969, and the taxes derived from this figure were over $100,000 per year.

¶ 7 In late 2006, Dahl received notice of the reclassification. In response, he planted winter wheat on the land in an effort to "address the farming deal of it." He also thought that winter wheat would increase the marketability of the property, because it was a visually attractive crop. The crop was never able to be harvested, however, because the cold came too soon after planting. Dahl did not attempt to farm the property again until 2009.

¶ 8 Also in late 2006, Dahl sought to appeal the 2006 reclassification and the resulting assessed value and taxes. However, rather than first exhausting his administrative remedies, he simultaneously appealed the reclassification in two separate venues, the Board *and* the circuit court. As to Dahl's administrative action, he argued before the Board that the developer's relief provision applied. Dahl argued that, although he had neglected to record the plats, he had, nevertheless, complied with the Plat Act (765 ILCS 205/1 (West 2006)) and should, therefore, qualify for tax relief. The Board rejected this argument. The Board affirmed the property's reclassification as nonfarmland and the corresponding assessed value of $1,424,969. The Board based its decision on its determination that the property was not farmed in 2005. Although Dahl appealed to the PTAB, the PTAB never made a decision on the merits. Instead, it dismissed the appeal and, on October 23, 2007, denied a request to reinstate it.

¶ 9 Meanwhile, the circuit court was willing to consider Dahl's appeal even though the administrative case was still pending, because, in its view, Dahl's case concerned a tax exemption. The circuit court ruled that the developer's relief provision acted to exempt the

---

[2]The tax assessment value for this farmland would later approximate $5,000 (as opposed to $18,000). However, this is not a critical difference, as even the $18,000 assessed value led to comparatively minimal taxes. Rather, the critical difference is that between the property's assessed value when classified as farmland and when classified as nonfarmland.

land from an increase in assessed value. The circuit court released its decision in August 2007. The assessor then appealed to this court.

¶ 10 In December 2007, Dahl finally recorded the plat for subdivision, as he thought he had done in 2005. Upon recording the plat, the county recorder transmitted notice of the plat to the assessor's office.

¶ 11 On September 22, 2008, this court vacated the circuit court's August 2007 decision. *American National Bank Trust No. 2456 v. Whitwell*, Nos. 2-07-0889, 2-07-0908 cons. (2008) (unpublished order under Supreme Court Rule 23). We disagreed with the circuit court that Dahl's case concerned a tax exemption. *Id*. at 7. Therefore, an exemption was not available as a basis by which to excuse Dahl from exhausting his administrative remedies before seeking review in the courts. *Id*. We held that no other exception applied to the requirement that Dahl exhaust his administrative remedies. *Id*. at 7-11. Because the circuit court never had jurisdiction to consider the application of the developer's relief provision, we did not review its decision on the merits. *Id*. at 12.

¶ 12 This court's ruling had the effect of reversing the circuit court's ruling as to the property's assessed value for 2006. Therefore, the 2006 taxes returned as originally issued. Again, in 2006, the property had a nonfarmland classification, a tax assessment value of $1,424,969, and taxes, derived from this figure, of over $100,000 per year.

¶ 13 However, *because the parties did not timely appeal the 2007 taxes*, which the assessor had rolled over from 2006 in order to be consistent with the later vacated circuit court ruling, the 2007 taxes remained in effect. In 2007, the property had a nonfarmland classification (because the property had not been farmed since 2005) but an assessed value of $4,918, *as though* the property were farmland (because the circuit court had determined that the 2005 "platting" was sufficient to invoke the developer's relief provision), and the taxes derived from the assessed value were approximately $300. Neither party seems to dispute that, had the 2007 taxes been timely appealed, the practical result would have been the issuance of taxes consistent with the reissued 2006 taxes, *i.e.*, based on a nonfarmland classification and an assessed value of approximately $1,424,969, taxes of over $100,000.

¶ 14 In October 2008, the assessor again classified the property as nonfarmland. However, because this court had, in September 2008, vacated the circuit court's ruling that the developer's relief provision applied, it no longer assessed the property as though it were farmland but instead assessed it according to its true classification. The assessor reasoned that, because the 2007 platting had occurred when the property was classified as nonfarmland, the use prior to platting was as nonfarmland, and, therefore, the property was to be assessed as nonfarmland ("[because] *** of [this court's] decision, the 2008 assessment was changed to [the] market value of the property prior to platting"). This led to a tax assessment value of $1,580,197, and the taxes derived from this figure were again over $100,000. In 2009, the assessor classified and taxed the property as it had in 2008.

¶ 15 Dahl separately appealed the 2008 and the 2009 assessments to the Board. With little explanation, the Board affirmed the assessor's nonfarmland classification and agreed that the assessed value should be based on that classification. It did, however, slightly reduce the assessed value of the property due to decreased market rates. For example, the 2008 assessed value was decreased from $1,580,197 to $1,521,468.

¶ 16 Dahl then separately appealed the 2008 and the 2009 assessments to the PTAB. In each appeal, Dahl argued that the developer's relief provision required that his assessment not be

altered subsequent to platting. In Dahl's view, because he received the preferential farmland assessment the year that the property was platted (in 2007), he should continue to receive the preferential farmland assessment in 2008 and 2009 and until the conditions of subsection (c) of the developer's relief provision are met, such as by building a habitable structure on the property. Dahl urged that the controlling case was *Paciga v. Property Tax Appeal Board*, 322 Ill. App. 3d 157 (2001). Alternatively, although not relevant to this appeal, Dahl argued that the open space provisions of the Property Tax Code (35 ILCS 200/10-155 (West 2006)) applied to the property.

¶ 17 The Board and the School District (hereinafter, collectively referred to as De Kalb), first responded that Dahl's appeal should be dismissed because he did not plead a *prima facie* case. On the merits, De Kalb argued that the developer's relief provision provided that platting froze the classification, or use, of the property, not the assessment. Because the property had been classified as nonfarmland when it was platted in 2007 (and was also classified as nonfarmland in 2006), that classification "froze," and, per subsection (b), the assessed value of the property in 2008 and 2009 was to be "based on the estimated price the property would bring at a fair and voluntary sale *for use* by the buyer for the same purposes for which the property was used *when last assessed prior to its platting*." (Emphases added.) 35 ILCS 200/10-30 (West 2006). Additionally, De Kalb argued that, even if subsection (b) froze the assessment and not the use, the 2007 assessment of $4,918 was invalid because it was based on a circuit court ruling that was vacated (leaving only the earlier Board ruling on the same issue, which went the opposite way). Therefore, in De Kalb's view, the 2007 assessment could not provide the basis for the 2008 and 2009 assessments. De Kalb urged that the controlling case was *Mill Creek Development, Inc. v. Property Tax Appeal Board*, 345 Ill. App. 3d 790 (2003).

¶ 18 The PTAB denied the motion to dismiss. The case went to hearing, and, thereafter, the PTAB agreed with Dahl. It reasoned that Dahl had properly platted the property in 2007 and that therefore the assessment should not be increased until a habitable structure was built on the property. It quoted *Paciga* at length:

" 'It follows then that subsection 10-30(a) applies to situations like the one at bar, where a property larger than 10 acres and previously classified as farm property has been platted and subdivided with streets but no habitable structure has been completed on any lot nor is any lot used for any business, commercial, or residential purpose. Further, the language of subsection 10-30(c), interpreted with the aid of the legislative purpose, reveals that no change in valuation will occur until a habitable structure is constructed ***. *** Absent such a change in use, subsection 10-30(a) applies to the entire property and the assessment valuation will not increase.' " *Dahl*, Ill. Property Tax Appeal Bd. Dec. 09-03144.001-C-3 (Dec. 21, 2012) (quoting *Paciga*, 322 Ill. App. 3d at 162-63).

Additionally, the PTAB explained:

"When the [assessor] changed the status (classification) of the subject property in October 2008 for the 2008 assessment, the subject property had already been platted and recorded in December 2007. Moreover, the record reveals that the 2007 total

assessment of the subject property was $4,918 based on a non-farmland classification."[3] *Id.*

¶ 19 The PTAB did not address De Kalb's argument that the 2007 assessment could not be the basis for the 2008 and 2009 assessment because the 2007 assessment was based on a circuit court ruling that was vacated.

¶ 20 Having found that the developer's relief provision applied, the PTAB did not consider Dahl's alternative argument that the open space provisions of the Property Tax Code applied to the property. It effectively found that claim moot, because it found that the developer's relief provision provided for the lower assessed value and corresponding taxes. The PTAB's ruling resulted in a refund of approximately $240,000 to Dahl for 2008 and 2009. This appeal followed.

¶ 21                                    II. ANALYSIS
¶ 22                                   A. Introduction

¶ 23 De Kalb argues that the PTAB erred in finding that Dahl was entitled to relief pursuant to the developer's relief provision. 35 ILCS 200/10-30 (West 2006). De Kalb's primary argument is that Dahl should not receive the benefit of a judgment that was subsequently vacated (citing *Willett Co. v. Carpentier*, 4 Ill. 2d 407, 412-13 (1954)), *i.e.*, the circuit court's judgment that the 2005 "platting" triggered the developer's relief provision. While we do not disagree with the broad principle that a party should not receive the benefit of a vacated ruling, we favor De Kalb's related, secondary challenge to the PTAB's ruling. There, De Kalb directly challenges the PTAB's application of the developer's relief provision to the circumstances in this case.

¶ 24 In reviewing the PTAB's application of the developer's relief provision, we begin by stabilizing four factors in order to determine whether, even in the scenario most advantageous to Dahl, the developer's relief provision applies to this case. First, we acknowledge that the property was *not* properly platted in 2005 (although that alleged 2005 platting *did* provide the basis for the circuit court's now-vacated decision to apply the developer's relief provision to freeze assessments in 2006). Dahl admits this, and he no longer relies on any alleged 2005 platting as a basis for relief under the developer's relief provision. Second, we assume, for purposes of this analysis only, that the property *was* properly platted in 2007 (Dahl and the PTAB promote this position, whereas De Kalb asserts that Dahl did not meet his burden of proof in establishing this point). Third, we recognize that, in both 2006 and 2007, before it was platted, the property was classified as nonfarmland and its assessed value corresponding with that classification would have been approximately $1,424,969. Fourth, and nevertheless, based on the now-vacated circuit court decision, the property was assessed in 2007 *as though it were* farmland.

¶ 25 We now turn to the PTAB's decision that the developer's relief provision required that the property continue to be assessed *as though it were* farmland through 2008 and 2009. We first set forth the standard of review and the guidelines for statutory interpretation. We then

---

[3]This statement, of course, appears internally inconsistent. First, the PTAB says that the assessor *re*classified the property as nonfarmland in 2008, when, in fact, the property had been classified as nonfarmland since 2006. In the very next sentence, the PTAB correctly states that the property was already classified as nonfarmland in 2007.

consider the PTAB's reliance on *Paciga*. For reasons set forth below, we do not find *Paciga* to be controlling, because the statutory-interpretation issue there is not implicated by the facts of our case. Rather, the *Mill Creek* court's interpretation of the provision applies to the facts here.

¶ 26                                    B. Standards and Guidelines

¶ 27    The Administrative Review Law provides that judicial review of an administrative agency's decision extends to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2006). The standard of review given to an agency's decision turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005). An agency's conclusion of law is ordinarily reviewed *de novo*. *Id*. Still, we give some deference to the statutory interpretations of an agency charged with the statute's administration and enforcement. *Bond County Board of Review v. Property Tax Appeal Board*, 343 Ill. App. 3d 289, 291 (2003). The agency's interpretations, while not binding on the courts, are an informed source, helpful to ascertaining the legislative intent, because of the agency's expertise and experience in enforcing the statute. *Id*. An agency's determination of fact is reviewed according to the manifest-weight-of-the-evidence standard. *Id*. When an agency's decision involves mixed questions of law and fact, the clearly-erroneous standard applies. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision is deemed "clearly erroneous" only where the reviewing court, upon consideration of the entire record, is left with the definite and firm conviction that an error has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). Here, the parties suggest that the clearly-erroneous standard is appropriate because this case presents a question both of law (the interpretation of the developer's relief provision) and of fact (whether Dahl properly platted the property). However, because we interpret the statute to preclude relief under the facts before us regardless of whether Dahl properly platted the property, our analysis involves only a question of law and our review is, therefore, *de novo*.

¶ 28    The primary rule of statutory interpretation is to ascertain and effectuate the legislature's intent in enacting the provision. *Bond County*, 343 Ill. App. 3d at 292. In ascertaining legislative intent, we first look to the words of the statute. *Paciga*, 322 Ill. App. 3d at 160. If the words of the statute are ambiguous or if the meaning is unclear, we may consider the statute's legislative history as an aid to interpretation. *Id*. at 161. A statute is ambiguous if it is capable of more than one reasonable interpretation. *Id*. If the statute is capable of more than one interpretation, the one that best carries out the purpose of the statute will carry the day. *Id*. A court should not interpret a statute in a manner that would lead to absurd or unjust results. *Id*. Likewise, a court should not interpret a statute in a manner that would render any portion of it meaningless or void. *Id*. "Taxing laws are strictly construed and are not to be extended beyond the clear import of the language used." *Bond County*, 343 Ill. App. 3d at 292. Any doubt in the application of tax laws will be construed against the government and in favor of the taxpayer. *Id*.

¶ 29    Again, this case turns on the application of the developer's relief statute, which states:

> "(a) In counties with less than 3,000,000 inhabitants, *the platting and subdivision of property* into separate lots and the development of the subdivided property with

- 8 -

streets, sidewalks, curbs, gutters, sewer, water and utility lines *shall not increase the assessed valuation of all or any part of the property*, if:

(1) The property is platted and subdivided in accordance with the Plat Act;

(2) The platting occurs after January 1, 1978;

(3) At the time of platting the property is in excess of 10 acres; and

(4) At the time of platting the property is vacant or used as a farm as defined in Section 1-60.

(b) Except as provided in subsection (c) of this Section, the assessed valuation of property so platted and subdivided shall be determined each year based on the estimated price the property would bring at a fair voluntary sale *for use by the buyer for the same purposes for which the property was used when last assessed prior to its platting*.

(c) Upon completion of a habitable structure on any lot of subdivided property, or upon the use of any lot, either alone or in conjunction with any contiguous property, for any business, commercial or residential purpose, or upon the initial sale of any platted lot, including a platted lot which is vacant: (i) the provisions of subsection (b) of this Section shall no longer apply in determining the assessed valuation of the lot, (ii) each lot shall be assessed without regard to any provision of this Section, and (iii) the assessed valuation of the remaining property, when next determined, shall be reduced proportionately to reflect the exclusion of the property that no longer qualifies for valuation under this Section. Holding or offering a platted lot for initial sale shall not constitute a use of the lot for business, commercial or residential purposes unless a habitable structure is situated on the lot or unless the lot is otherwise used for a business, commercial or residential purpose." (Emphases added.) 35 ILCS 200/10-30 (West 2006).

The developer's relief provision was enacted to "protect real estate developers from rising assessments that result from the initial platting and dividing of farmland." *Grundy County National Bank v. Property Tax Appeal Board*, 297 Ill. App. 3d 774, 776 (1998) (discussing section 20g-4 (Ill. Rev. Stat. 1991, ch. 120, ¶ 501g-4), the similarly worded predecessor to section 10-30).

## C. *Paciga*, *Mill Creek*, and the Instant Case

In interpreting the developer's relief provision, the PTAB relied on *Paciga*. In *Paciga*, the taxpayer owned 24 acres of land that was classified and assessed as farmland (more specifically, as "cropland" and as "other farmland"). *Paciga*, 322 Ill. App. 3d at 159. In 1996, the land's assessed value based on these classifications was $1,178. Also in 1996, the taxpayer subdivided the property into 14 lots and cut a road to service the lots. In 1997, the assessing authority revalued the property at $21,763, based on the market value of the subdivided parcels, as determined from the median sales price of comparable farmland in the prior year. The taxpayer appealed the new valuation, but the PTAB affirmed, reasoning that subsection (b) of the developer's relief provision "provided that platted and subdivided property must be valued by calculating the property's market value as it was used prior to platting." *Id*. The property had been used as farmland prior to platting. Therefore, in the PTAB's view, subsection (b) dictated that it be valued according to its current market value if

used as farmland. The taxpayer appealed, and the circuit court reversed. The PTAB then appealed to this court. *Id*. at 159-60.

¶ 32 Applying principles of statutory interpretation, this court found that the developer's relief provision was ambiguous when applied to the facts in the case, because it was susceptible to two conflicting interpretations:

"Subsection 10-30(a) provides that the assessed valuation of farm or vacant property larger than 10 acres will not increase when it is platted, subdivided, and developed with streets, etc. [Citation.] On the other hand, subsection 10-30(b) seems to provide that the assessed valuation of platted and subdivided property may increase every year because it is to be based on the estimated price the property would bring at a fair voluntary sale." *Id*. at 161 (citing 35 ILCS 200/10-30(a), (b) (West 1996)).

This court determined that the first interpretation was in keeping with the legislative intent, which was to prevent developers from having to pay increased taxes on farmland or vacant land in the beginning of the development process. *Id*. at 162.

¶ 33 We decline to extend the holding in *Paciga* to the instant case. Again, the unique problem in *Paciga* was that, although subsection (b) operates to keep the assessed value *low* in a *typical* case, it was operating to *increase* the assessed value in the circumstances at hand. In a typical case, where a developer plats farmland and the farmland is subsequently reclassified as nonfarmland (or residential, etc.), subsection (b) operates to ensure that the property continues to be assessed at the preferential farmland rate. The fact pattern in *Paciga* did not involve a *re*classification from farmland to nonfarmland. Rather, the *Paciga* court dealt with the question of whether the developer's relief provision permitted an increase in assessed value when the property retained the same classification or use both prior and subsequent to platting. Again, in *Paciga*, the original classification prior to platting was as farmland. After platting, the property was still classified as farmland, but it was reassessed according to the heightened price it might command at market, now subdivided and with a road, compared to *other farmland* sales from the prior year. The difference in assessed value in *Paciga* was not great ($1,178 to $21,763, both in the low range characteristic of farmland assessed values) compared to that in this case ($18,000 or $4,918 to $1.5 million, the first two being in the range of farmland assessed values and the latter being in the range of nonfarmland assessed values). Under the circumstances in *Paciga*, when a property is platted but *retains* its classification or use, the developer's relief provision was ambiguous as to whether the assessed value could increase subsequent to platting. As discussed, the *Paciga* court held that allowing the platting to cause an increase in the assessed value would contradict the purpose of the developer's relief provision. *Id*.

¶ 34 However, in our case, the platting did not cause an increase in the assessed value. Rather, as will be discussed in more detail below, the 2006 reclassification caused the increase in the assessed value. In the typical *re*classification scenario at play in our case, the directive in subsection (b) that the platted land be assessed according to its prior classification, or use, is not ambiguous. This directive is illustrated in *Mill Creek*.

¶ 35 In that case, Mill Creek developers purchased 39 acres of farmland in May 2000. *Mill Creek*, 345 Ill. App. 3d at 792. Shortly thereafter, the Mill Creek developers sold the southern 25 acres to M.C. Custom Homes. In July 2000, M.C. Custom Homes platted, subdivided, and recorded the southern portion. In August 2000, the assessing authority reclassified as residential *both* the southern and northern portions, because the property had not been farmed

in the year 2000. The reclassification caused the assessed value (for both portions, it seems) to go from $7,620 to $534,033. In June 2001, Mill Creek platted, subdivided, and recorded the northern portion. Mill Creek petitioned the board of review for relief from the increased assessment. *Id.* It maintained that the developer's relief provision provided that the mere platting and subdividing of vacant land or farmland cannot increase the assessed valuation of the land. *Id.* at 793. The board of review denied the petition. The PTAB affirmed the board of review. As in our case, presumably because the difference between the possible assessed values exceeded $300,000, the case went straight to the appellate court. *Id.*

¶ 36    The *Mill Creek* court discussed separately the effect of the developer's relief provision on each portion, because the southern and northern portions were platted and recorded in different years. *Id.* As to the *southern* portion, the PTAB argued that, although the assessor classified the property as residential in August 2000, the reclassification reached back to January 1, 2000. *Id.* at 794 (citing *In re Application of Rosewell*, 120 Ill. App. 3d 369, 373 (1983) (a property's assessed value is determined January 1 of the assessment year, and any changes in status are applied as of that date)). The court rejected this argument, holding that the developer's relief provision provides relief for the developer if the property meets the platting criteria *on the day* it is platted and subdivided, not on the day the platting retroactively appeared on the tax rolls. *Id.* at 795. The court found that the developer's relief provision applied to the southern portion, because the property was classified as farmland on the day it was platted. *Id.* at 794. The developer's relief provision states that platting and subdividing land shall not increase the assessed value if "at the time of platting the property is vacant or used as a farm." (Internal quotation marks omitted.) *Id.* Therefore, because the land *had already been* platted, subdivided, and recorded when the assessor reclassified the property as residential, the property must be assessed according to its prior status as farmland. *Id.* at 795.

¶ 37    The *Mill Creek* court declined to extend relief to the northern portion. The court reasoned that the northern portion was not platted and subdivided until June 2001, *after* the August 2000 reclassification as residential. *Id.* Since it was residential when platted, it did not fall under the statute's protection and was subject to the increased assessment. *Id.* The court further reasoned that this result was consistent with legislative intent, because the result protects those developers who timely plat and subdivide property for residential development. *Id.* "Developers who plat and subdivide land beyond the year in which it [was] reassessed risk losing the benefit afforded by the [developer's relief provision]. Thus, while timely developers are protected, assessors are not indefinitely or unfairly prevented from reclassifying property and collecting increased taxes." *Id.* at 796.

¶ 38    In our case, the assessor reclassified the property as nonfarmland in 2006 and it received an assessed value of $1,424,969. Dahl did not plat and subdivide the property until 2007. As stated in *Mill Creek*, "[d]evelopers who plat and subdivide land beyond the year in which it [was] reassessed risk losing the benefit afforded by the [developer's relief provision]." *Id.* When Dahl platted and subdivided his property, the property was not classified as farmland. Therefore, the developer's relief provision did not apply to preserve the farmland assessment.

¶ 39    Having discussed the instant case in relation to both *Paciga* and *Mill Creek*, we must address language in *Paciga* that, if read in isolation, has the potential to be misinterpreted. That language is: "subsection 10-30(b) applies only when one of the lots contains a habitable structure [or meets another condition of subsection (c)]." *Paciga*, 322 Ill. App. 3d at 163. Per

the actual holding in *Paciga*, where a property retains its classification both before and after platting, the assessed value cannot go up until the conditions of subsection (c) are met. At that time, the developer's relief provision no longer applies to the property at all. Therefore, the *Paciga* court's isolated statement–that "subsection 10-30(b) applies only when [the conditions of subsection (c) are met]"–should be relegated to the context of that case. Consistent with its holding, the *Paciga* court would have been more accurate if it had stated that "increased assessed values are permitted once the conditions of subsection (c) are met."

¶ 40    In the typical *re*classification scenario, as in *Mill Creek*, subsection (b) operates as intended to keep the assessed values of qualifying property *lower* throughout the platting and development process, and that relief expires when the conditions of subsection (c) are met. In other words, subsection (b) is active *until* the conditions of subsection (c) are met, not, per the problematic *Paciga* quote, *unless* the conditions of subsection (c) are met. Our interpretation is consistent with the plain language of subsection (c), which states that, "*[u]pon* completion of a habitable structure *** the provisions of subsection (b) of this Section shall no longer apply *** [and] each lot shall be assessed without regard to any provision of this Section." (Emphasis added.) 35 ILCS 200/10-30 (West 2006).

¶ 41    In sum, our ruling is based on an interpretation of the developer's relief provision consistent with the case law. Per *Paciga*, the developer's relief provision does not allow for platting to increase the assessed value when the property's classification remains the same until the conditions of subsection (c) are met. Our case does not implicate this concern, because the platting did not cause the increase in the assessment. The 2006 reclassification caused the increase. Again, the assessor reclassified the land from farmland to nonfarmland in 2006, thereby increasing the assessed value. Per *Mill Creek*, the developer's relief provision does not apply to preserve the farmland assessment, because, when Dahl platted the land in 2007, he platted property that was already classified as nonfarmland.

¶ 42                              D. Remaining Matters

¶ 43    The above-stated rationale is dispositive of this appeal. Nevertheless, we briefly acknowledge De Kalb's main alternative arguments. De Kalb argues that Dahl did not meet his burden of showing that he properly platted the property. We need not address this argument because we have found that, even if Dahl properly platted the property in 2007, the platting would not act to secure farmland assessments in subsequent years. For the purposes of this appeal, equity does not prompt us to inquire further into the propriety of the platting. At a minimum, the platting was effective enough to cause the parcels to be renumbered and to be split from two to five.

¶ 44    De Kalb also argues that the PTAB should have dismissed Dahl's case because he did not present sufficient documentary evidence or establish a *prima facie* case at the pleadings stage. However, the denial of a motion to dismiss typically merges into the final judgment and is generally not reviewable once the arguments and evidence are fully developed at hearing. See *Moy v. Ng*, 371 Ill. App. 3d 957, 959-60 (2007) (concerning a motion for summary judgment).

¶ 45    Finally, De Kalb argues that the open space statute could not provide a basis for a lower assessed value. However, Dahl did not brief this issue, because the PTAB did not reach it, having (erroneously) found that the developer's relief provision provided for the lower assessed value that Dahl sought. We should not review a claim that the PTAB did not reach.

See, *e.g.*, *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 303 (2010) (the purpose of the Administrative Review Law is to have final decisions of the administrative agency judicially reviewed). Therefore, we remand for further proceedings on the open space claim.

¶ 46                            III. CONCLUSION

¶ 47        For the aforementioned reasons, we reverse the PTAB's ruling and remand for proceedings consistent with this opinion.

¶ 48        Reversed and remanded.